## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **EXPRESSJET AIRLINES LLC**, | Case No. 22-10787 (MFW) |
| Debtor.[1] | |

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION TAXES AND FEES, (II) AUTHORIZING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED THERETO, AND (III) GRANTING RELATED RELIEF

The above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed counsel, respectfully moves (the "Motion") as follows:

### RELIEF REQUESTED

1. The Debtor seeks entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "Proposed Interim Order") and **Exhibit B** (the "Proposed Final Order" and, together with the Proposed Interim Order, the "Proposed Orders"), (i) authorizing, but not directing, the Debtor to pay certain prepetition taxes, assessments, fees, and other charges in the ordinary course (the "Taxes and Fees") in an aggregate amount not to exceed $182,000 on an interim basis and not to exceed $302,000 on a final basis; (ii) authorizing, but not directing, all banks and other financial institutions to honor, to the extent of available funds, all checks and other fund transfers authorized pursuant to this Motion, whether such checks or other fund transfers are issued or presented prior to, on or after the Petition Date; and (iii) granting related relief.

---

1 The last four digits of the Debtor's federal EIN are 4495. The Debtor's mailing address is 1745 Phoenix Boulevard, Suite 250, College Park, GA 30349.

## JURISDICTION

2.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The Debtor consents pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8) and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), as supplemented by rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Local Rule 9013-1(m).

## BACKGROUND

5.      On August 23, 2022, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtor continues to manage its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee has been appointed in this case.

6.      Prior to filing for bankruptcy, the Debtor operated as a regional airline company with more than 40 years of experience.  In particular, the Debtor operated its leisure brand aha! (short for "air ● hotel ● adventure"), which provided travelers in smaller communities

with convenient, short, nonstop flights to and from the Reno-Tahoe International Airport.  The Debtor also operated *ad hoc* charter flights.  As of the Petition Date, the Debtor has ceased operating, canceled its scheduled and charter flights, terminated a substantial number of employees, and intends to promptly return its leased aircrafts and liquidate its remaining assets.

7.      Additional detail regarding the Debtor, its business, the events leading to the filing of this chapter 11 case, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of John Greenlee in Support of Chapter 11 Petition and First Day Relief* (the "First Day Declaration") filed concurrently with this Motion and incorporated herein by reference.

## TAXES AND FEES

8.      In the ordinary course, the Debtor collects, withholds, and incurs an assortment of Taxes and Fees that it remits periodically to various federal, state, and local taxing, licensing, regulatory, and other governmental authorities (collectively, the "Taxing Authorities"). The Taxes and Fees include (a) Sales Taxes, (b) State and Local Taxes, (c) Property Taxes, (d) Passenger Facility Charges, (e) Security Fees, (f) Excise Taxes, and (g) Flight Segment Taxes (each as defined and described below).

9.      The Debtor believes that it is current on all Taxes and Fees that were due and owing prior to the Petition Date.  To the extent, however, that the Debtor has inadvertently failed to timely pay any Taxes and Fees which became due and owing prior to the Petition Date, the Debtor is not, by this Motion, seeking authority to remit any "catch-up" payments, late penalties or similar fees to any of the Taxing Authorities.

10.    The Debtor estimates that as of the Petition Date, it has accrued approximately $302,000 of Taxes and Fees, of which $182,000 will become due and payable in the ordinary course within the first 21 days of this chapter 11 case (the "Interim Period").[2]

**Sales Taxes**

11.    Historically, the Debtor incurred various sales taxes in the ordinary course (the "Sales Taxes").  Specifically, the Debtor collected and remitted Sales Taxes to certain Taxing Authorities in connection with the operation of its business and the sale of its services. The Debtor estimates that as of the Petition Date, it has not accrued any prepetition liability with respect to such taxes; however, to the extent that such prepetition obligations exist, the Debtor seeks authority to pay them as they are discovered or arise.

**State and Local Taxes**

12.    The Debtor incurs and remits income, business, and other corporate taxes at a state and local level, which are typically invoiced in arrears for the prior quarter or year depending on the jurisdiction (the "State and Local Taxes").  The Debtor estimates that, as of the Petition Date, it has accrued approximately $12,000 in unpaid State and Local Taxes, all of which will become due and payable during the Interim Period.[3]

---

[2]    This estimate does not include any potential prepetition liabilities related to the Taxes and Fees that may later come due as the result of any audit.

[3]    The Debtor reserves the right to challenge these State and Local Taxes under federal preemption law, including the Anti-Head Tax Act, section 40116 of title 49 of the United States Code.  *See* 49 U.S.C. § 40116 ("Except as provided in subsection (c) of this section and section 40117 of this title, a State, a political subdivision of a State, and any person that has purchased or leased an airport under section 47134 of this title may not levy or collect a tax, fee, head charge, or other charge on—(1) an individual traveling in air commerce; (2) the transportation of an individual traveling in air commerce; (3) the sale of air transportation; or (4) the gross receipts from that air commerce or transportation.").

**Property Taxes**

13.    The Debtor is subject to property taxes levied by state and local governments (the "Property Taxes").  The Debtor typically pays Property Taxes in the ordinary course, and such taxes are typically invoiced in arrears for the prior quarter or year depending on how the relevant Property Tax is assessed.  Paying Property Taxes is critical because failing to pay certain Property Taxes may give rise to liens on the Debtor's property in favor of the relevant Taxing Authority to secure payment of those taxes.  Not paying Property Taxes could also result in additional fees and penalties being assessed against the Debtor.

14.    The Debtor estimates that as of the Petition Date, it has accrued approximately $60,000 in Property Taxes, none of which will become due and payable during the Interim Period.

**Passenger Facility Charges**

15.    Under section 40117 of title 49 of the United States Code and Part 158 of title 14 of the Code of Federal Regulations, the Debtor is required to collect passenger facility charges ("PFCs") from passengers on behalf of certain airport operators for use by those airports to finance approved airport improvement projects.  49 U.S.C. § 40117; 14 C.F.R. pt. 158.  These charges must be remitted to the appropriate airport operators by the last day of the month following the month in which a ticket is sold or the passenger has flown (depending on the airport).  Collected PFCs are held in trust and are not considered property of the Debtor's estate. *See* 49 U.S.C. § 40117(g)(4) and (m)(2).

16.    The Debtor estimates that as of the Petition Date, it has collected approximately $60,000 in PFCs that have not yet been remitted to certain airport operators, of which approximately $35,000 will come due and payable during the Interim Period.

**TSA / Security Fees**

17.     Pursuant to the Aviation and Transportation Security Act, the Debtor also collects fees related to security services ("Security Fees").  *See* 49 U.S.C. § 44940.  These Security Fees must be remitted to the Undersecretary of Transportation of the Transportation Security Administration (the "TSA") on or before the last day of the month following the month in which a ticket is sold.

18.     The Debtor estimates that as of the Petition Date, it has accrued approximately $80,000 in Security Fees that have not been remitted to the TSA, of which approximately $45,000 will come due during the Interim Period.

**Excise Taxes**

19.     Pursuant to section 4261(a) of title 26 of the United States Code (the "IRC"), the Debtor collects taxes ("Excise Taxes") imposed on amounts paid for certain transportation of persons by air calculated as 7.5 percent on the amount paid for the taxable transportation of any person.  26 U.S.C. § 4261; 26 C.F.R. § 49.4261-1.  The Debtor pays Excise Taxes in arrears with payments to the IRS due on the 15th and last day of each month for the preceding two-week period.

20.     The Debtor estimates that as of the Petition Date, it has accrued approximately $60,000 in Excise Taxes that have not yet been remitted to the IRS, all of which will come due in the Interim Period.

**Flight Segment Taxes**

21.     Pursuant to section 4261(b) of the IRC, the Debtor collects taxes ("Flight Segment Taxes") calculated as a flat fee on the amount paid for each domestic segment of taxable transportation by air, which is defined as transportation by air beginning in the United

States or in the 225-mile zone (as defined under section $4262(c)(2))^4$ and ending in the United

States or in the 225-mile zone and consists of one takeoff and one landing.  26 U.S.C. § 4261,

4262; 26 C.F.R. § 49.4261-1.  The Debtor pays Flight Segment Taxes in arrears with payments

to the IRS due on the 15th and last day of each month for the preceding two-week period.

22.    The Debtor estimates that as of the Petition Date, it has accrued

approximately $30,000 in Flight Segment Taxes that have not yet been remitted to the IRS, all of

which will come due in the Interim Period.

**BASIS FOR RELIEF REQUESTED**

**I.    The Court should authorize the Debtor to pay prepetition amounts owing in respect of the Taxes and Fees.**

23.    The requested relief herein should be granted because, among other

things: (i) failing to pay the Taxes and Fees may interfere with the Debtor's wind down and

efforts to maximize value; (ii) certain of the Taxes and Fees are not property of the Debtor's

estate; (iii) certain of the Taxes and Fees may be secured or entitled to priority treatment; (iv)

paying the Taxes and Fees is a sound exercise of the Debtor's business judgment; and (v) paying

the Taxes and Fees is appropriate under section 105 of the Bankruptcy Code and the "doctrine of

necessity."

**A.    Failing to Pay the Taxes and Fees could materially disrupt or impair the Debtor's business and efforts to maximize value.**

24.    The Taxes and Fees represent involuntary pecuniary burdens imposed by

the authority of a federal, state or local legislature under its police or taxing power, in exchange

for the ability to carry out the Debtor's business in the applicable localities.   The Taxes and Fees

generally must be paid to keep the Debtor in good standing with the Taxing Authorities and to be

---

4        "The term '225-mile zone' means that portion of Canada and Mexico which is not more than 225
         miles from the nearest point in the continental United States."  26 U.S.C. § 4262(c)(2).

able to wind down its business.  Failing to pay the Taxes and Fees could cause the Taxing Authorities to take adverse action against the Debtor, including, among other things, asserting liens on the Debtor's assets or seeking to lift the automatic stay, which would impose unnecessary and harmful costs and disruption to the Debtor's estate.  Additionally, failing to pay the Taxes and Fees may jeopardize the Debtor's good standing or ability to maintain and preserve the value of its assets.  For example, the Taxing Authorities could impose penalties or interest on account of unpaid Taxes or Fees, and continued nonpayment could result in tax levies, fines, denials or revocations of licenses or permits.  The Debtor and its estate cannot afford such potential adverse consequences.

25.     Furthermore, under applicable law, failing to pay certain of the Taxes and Fees could subject the Debtor, the Debtor's officers and directors, or other responsible employees of the Debtor to lawsuits, personal liability or even prosecution.  The Debtor requires the undivided attention and dedication of its personnel while it winds down and successfully administers this chapter 11 case, and therefore cannot afford to have its personnel distracted by the possible threat of personal liability or legal action.

**B.     Certain of the Taxes are not property of the Debtor's estate.**

26.     Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

27.     To the extent the Debtor has collected any taxes from third parties with a legal obligation to remit such taxes to the applicable Taxing Authorities, such amounts may be

held in trust for the benefit of the Taxing Authorities and are not property of the Debtor's estates. *See, e.g.*, *Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 97 (3d Cir. 1994) (holding that income required to be withheld by city ordinance and state law is held "in trust" for the taxing authority); *DiChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 433–34 (2d Cir. 1985) (holding that a sales tax that is required by state law to be collected by sellers from their customers is a "trust fund" tax); *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1067–68 (9th Cir. 1998); *In re Al Copeland Enters., Inc.*, 991 F.2d 233, 237 (5th Cir. 1993); *In re Equalnet Comm. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."). The Debtor understands and believes that many of the taxes likely constitute "trust fund" taxes that the Debtor does not have an equitable interest in.  Therefore, the Debtor believes it should be permitted to pay the applicable taxes to the Taxing Authorities as they become due.

> **C.**    **Certain of the Taxes and Fees may be secured or entitled to priority treatment.**

28.    Claims asserted on account of some of the Taxes and Fees are or may become secured or may otherwise be priority claims entitled to payment before general unsecured creditors.  *See* 11 U.S.C. §§ 362(b)(18), 507(a)(8).  Furthermore, to the extent that such amounts are entitled to priority treatment under section 507(a)(8)(C) of the Bankruptcy Code, the Taxing Authorities also may attempt to assess interest and penalties.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

29.     Notably, substantially all of the Taxes and Fees are involuntary pecuniary burdens imposed by the authority of a federal, state or local legislature under its police or taxing power of the type that may be secured or priority claims.  As secured or priority claims, the Taxes and Fees must be paid before payment of any general unsecured claims.  Thus, the Debtor believes that payment of the Taxes and Fees through the relief sought in this Motion affects only the timing of the payment and, therefore, does not unduly prejudice the rights of other creditors. Indeed, to the extent that early payment avoids fees and penalties and preserves the Debtor's ability to manage and wind down the business without disruption, it benefits unsecured creditors.

**D.     Paying the Taxes and Fees is a sound exercise of the Debtor's business judgment.**

30.     The Court may also authorize the Debtor to pay the Taxes and Fees under section 363(b)(1) of the Bankruptcy Code, which provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to pay prepetition wages); *In re James A. Phillips, Inc.*, 29 B.R. 391, 397 (Bankr. S.D.N.Y. 1983) (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

31.     This standard is satisfied here.  The Debtor's ability to pay the Taxes and Fees is critical to the Debtor's uninterrupted wind down during this chapter 11 case.  Failing to pay the Taxes and Fees could cause Taxing Authorities to take precipitous actions that would

hinder the Debtor's efficient and effective administration of this case and burden the Debtor's estate with unnecessary expenses.  Any collection action on account of such penalties would distract the Debtor and its personnel to the detriment of all parties in interest.  Accordingly, it is in the best interest of the Debtor's estate to eliminate the possibility of such distractions during the wind down and to preserve and maximize value.

**E.    Payment is appropriate under section 105 of the Bankruptcy Code and the "doctrine of necessity."**

32.    Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175.  Under section 105(a), the Court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("To invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is critical to the debtor's reorganization").

33.    This standard is satisfied here.  As stated above, paying the Taxes and Fees is critical to enable the Debtor to maximize value and wind down the business during the pendency of this chapter 11 case and to avoid costly distractions relating to audits, imposed liens and defending against the Taxing Authorities' exercise of their rights related thereto.

**II.    Cause exists to authorize the Debtor' financial institutions to honor checks and electronic fund transfers.**

34.    The Debtor represents that it will have sufficient funds to pay the amounts described herein in the ordinary course by virtue of cash on hand or future cash flows from

potential asset sales.  Also, under the Debtor's existing cash management system, the Debtor represents that checks or wire transfer requests can be readily identified as relating to an authorized payment with respect to the Taxes and Fees.  Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable banks should be authorized, when requested by the Debtor, to receive, process, honor and pay any and all checks or wire transfer requests with respect to the taxes.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

35.    Bankruptcy Rule 6003 empowers the Court to issue an order, within 21 days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief is "necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  For the reasons discussed above, immediate and irreparable harm would result if the relief requested herein were not granted. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### WAIVER OF BANKRUPTCY RULE 6004(h)

36.    The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief requested in this Motion is necessary for the Debtor to preserve the value of its estate.  Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **RESERVATION OF RIGHTS**

37.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtor; (ii) a waiver of the Debtor's rights to dispute any claim; (iii) a promise or requirement to pay any claim; (iv) a waiver of any claim or cause of action of the Debtor that exists against any entity; (v) a ratification or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; (vi) a waiver of limitation of the Debtor's rights under the Bankruptcy Code, any other applicable law, or any agreement; or (vii) an admission or concession by the Debtor that any lien acknowledged or satisfied under this Motion is valid, and the Debtor expressly reserves and preserves its rights to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

## **NOTICE**

38.     Notice of this Motion is being provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (iii) Wells Fargo Bank, N.A.; (iv) the Securities and Exchange Commission; (v) the Taxing Authorities; (vi) the Internal Revenue Service; (vii) the United States Attorney's Office for the District of Delaware; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking first-day relief, the Debtor will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtor respectfully submits that no further notice of this Motion is required under the circumstances.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of the Proposed Orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and such other and further relief as may be just and proper.


Dated: August 23, 2022           MORRIS, NICHOLS, ARSHT & TUNNELL LLP
       Wilmington, Delaware

*/s/ Eric D. Schwartz*
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
Jonathan M. Weyand (No. 6959)
Sophie Rogers Churchill (No. 6905)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
eschwartz@morrisnichols.com
mharvey@morrisnichols.com
ptopper@morrisnichols.com
jweyand@morrisnichols.com
srchurchill@morrisnichols.com

*Proposed Counsel to the Debtor and Debtor in Possession*