# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**EXPRESSJET AIRLINES LLC,**<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 22-10787 (MFW)<br><br>**Re: D.I. 5** |

## INTERIM ORDER (I) AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an interim order (this "Interim Order") and final order pursuant to sections 105(a), 363(b), 507(a), 1107(a) and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003(b) and 6004, and Local Rule 9013-1(m): (i) authorizing, but not directing, the Debtor to make payments toward the prepetition fixed, liquidated and undisputed claims of Critical Vendors; and (ii) granting related relief; all as more fully described in the Motion; and upon consideration of the First Day Declaration; and due and sufficient notice of the Motion having been given under the circumstances; and it appearing that no other or further notice need be provided under the circumstances; and it appearing that the relief requested by this Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED on an interim basis as set forth herein.

---

[1] The last four digits of the Debtor's federal EIN are 4495. The Debtor's mailing address is 1745 Phoenix Boulevard, Suite 250, College Park, GA 30349.

[2] Capitalized terms used but not defined herein are defined in the Motion.

2. Until such time as a final order is entered, the Debtor is authorized, but not directed, in its sole discretion to make payments on account of prepetition Critical Vendor Claims as described in the Motion in amounts not to exceed $260,000 on an interim basis.

3. The Debtor is further authorized, but not directed, to undertake appropriate efforts to enter into Trade Agreements with the Critical Vendors if the Debtor determines, in its discretion, that such an agreement is necessary to its postpetition operations, including, without limitation on the following terms:

(a) The amount of such Critical Vendor's estimated claim, after accounting for any setoffs, other credits and discounts thereto, shall be as mutually determined in good faith by the Critical Vendor and the Debtor (but such amount shall be used only for purposes of the Order and shall not be deemed a claim allowed by the Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of the Court);

(b) The amount of payment toward the Critical Vendor's estimated claim;

(c) The Critical Vendor's agreement to be bound by the Customary Trade Terms, or such other trade terms as mutually agreed to by the Debtor and such Critical Vendor;

(d) The Critical Vendor's agreement to provide goods and services to the Debtor based upon Customary Trade Terms, and the Debtor's agreement to pay the Critical Vendor postpetition in accordance with such terms;

(e) The Critical Vendor's agreement not to file or otherwise assert against the Debtor, its estate or its respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtor arising from goods or services provided to the Debtor prior to the Petition Date, and that, to the extent that the Critical Vendor has previously obtained such a Lien, the Critical Vendor shall immediately take all necessary action to release such Lien;

(f) The Critical Vendor's acknowledgement that it has reviewed the terms and provisions of the Order and consents to be bound thereby;

(g) The Critical Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation or Bankruptcy Code section 503(b)(9) claim; and

(h) If a Critical Vendor who has received payment toward a Critical Vendor Claim subsequently refuses to supply goods or services to the Debtor on Customary Trade Terms, any payments received by the Critical Vendor on account of its Critical Vendor Claim will be deemed to have been in payment of then outstanding postpetition obligations owed to such Critical Vendor, and that such Critical Vendor shall immediately repay to the Debtor any payments received on account of its Critical Vendor Claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding, without the right of setoff or reclamation.

4. Notwithstanding the foregoing, the Debtor may, in its sole discretion, reinstate a Trade Agreement if the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtor's notification to the Critical Vendor of such default; or the Debtor, in its discretion, reaches a favorable alternative agreement with the Critical Vendor.

5. For the avoidance of doubt and notwithstanding the foregoing, the Debtor may, in its sole discretion, negotiate and agree on Customary Trade Terms with Critical Vendors absent a Trade Agreement.

6. The Debtor's banks shall be and hereby are authorized and directed to receive, process, honor and pay all prepetition and postpetition checks and fund transfers on account of the Critical Vendor Claims that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Debtor shall be and hereby is authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Critical Vendor Claims to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

7. Nothing herein shall be construed to limit, or in any way affect, the Debtor's ability to dispute any Critical Vendor Claim.

8. The authorization granted hereby to pay Critical Vendor Claims shall not create any obligation on the part of the Debtor or its officers, directors, attorneys or agents to pay

the Critical Vendor Claims, none of the foregoing persons shall have any liability on account of any decision by the Debtor not to pay a Critical Vendor Claim, and nothing contained in this Interim Order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Critical Vendor Claims to the extent they are not paid.

9. Nothing in the Motion or in this Interim Order is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtor, (b) a waiver of the Debtor's rights to dispute any claim, including the validity or priority thereof, or (c) an approval or assumption of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise. Likewise, any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

10. Responses or objections to the Motion and entry of a final order with respect to the Motion must: (a) be made in writing; (b) state with particularity the grounds therefor; (c) conform to the Bankruptcy Rules and the Local Rules; and (d) be served upon (i) proposed counsel to the Debtor, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, Delaware, 19801, Attn: Eric D. Schwartz (eschwartz@morrisnichols.com), Matthew B. Harvey (mharvey@morrisnichols.com) and Paige N. Topper (ptopper@morrisnichols.com); and (ii) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Wilmington, Delaware 19801, Attn: Timothy J. Fox, Jr. (timothy.fox@usdoj.gov) (the "Notice Parties").

11. The deadline by which responses or objections to the Motion and the final order must be filed and received by the Notice Parties is **September 8, 2022**, at **4:00 p.m.** (prevailing Eastern Time). A final hearing, if required, on the Motion will be held on **September**

**15, 2022**, at **10:00 a.m.** (prevailing Eastern Time).  If no responses or objections are filed to the Motion and entry of this Interim Order on a final basis, the Court may enter a final order without further notice or a hearing.

12. The Debtor is authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Interim Order.

13. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm.

14. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

15. This Court shall retain jurisdiction with respect to all matters related to the interpretation or implementation of this Interim Order.

Dated: August 24th, 2022  
Wilmington, Delaware

MARY F. WALRATH  
UNITED STATES BANKRUPTCY JUDGE

5