# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| **EXPRESSJET AIRLINES LLC,** | Case No. 22-10787 (MFW) |
| Debtor.[1] | **Re: D.I. 11 & 13** |

**SUPPLEMENTAL DECLARATION OF JOHN GREENLEE IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING DEBTOR'S KEY EMPLOYEE RETENTION PROGRAM (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY STATUS TO ALL PAYMENTS TO BE MADE BY THE DEBTOR PURSUANT THERETO AND (III) GRANTING RELATED RELIEF**

I, John Greenlee, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, as follows:

1. I am the President of ExpressJet Airlines LLC, the above-captioned debtor and debtor in possession (the "Debtor"). In such capacity, I am intimately familiar with the Debtor's business, day-to-day operations and financial affairs.

2. This declaration (the "Supplemental Declaration") supplements the *Declaration of John Greenlee in Support of Debtor's Motions for Entry of (A) Interim and Final Orders (I) Approving Debtor's Key Employee Retention Program, (II) Granting Administrative Expense Priority Status to All Payments to be Made by the Debtor Pursuant Thereto and (III) Granting Related Relief, and (B) Shortening Time for Notice Thereof* (D.I. 13) (the "Declaration")[2] and is in support of the *Debtor's Motion for Entry of Interim and Final Orders (I) Approving*

---

[1] The last four digits of the Debtor's federal EIN are 4495. The Debtor's mailing address is 1745 Phoenix Boulevard, Suite 250, College Park, GA 30349.

[2] Capitalized terms used but not defined herein are defined in the Declaration.

*Debtor's Key Employee Retention Program, (II) Granting Administrative Expense Priority Status to All Payments to be Made by the Debtor Pursuant Thereto and (III) Granting Related Relief* (D.I. 11) (the "KERP Motion").

   3. Except as otherwise noted, the statements set forth in this Supplemental Declaration are based upon my personal knowledge, information supplied to me by other members of the Debtor's management or the Debtor's professionals, discussions with other employees of the Debtor, my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtor's operations and human resources required by the Debtor for an orderly wind down of those operations and to preserve the value of, and liquidate, the Debtor's assets. If called as a witness, I could and would competently testify to the matters set forth in this Supplemental Declaration.

   4. As detailed in the KERP Motion and Declaration, the Debtor currently employs certain key employees that are critical to an orderly liquidation of the Debtor's assets and wind down of the Debtor's estate. The institutional knowledge and skills of the KERP Participants are essential to maximizing the value of the Debtor's remaining assets for the benefit of the Debtor's estate and its creditors.

   5. While the KERP Participants are vital to the success of the Debtor's liquidation process, no KERP Participant is in a position of strategic control over the Debtor's business or company decisions made in this chapter 11 case. Although certain of the KERP Participants have titles of "Vice President," "Managing Director" or "Director" of a particular division (a common practice in the Debtor's industry), my understanding is that none of these KERP Participants qualify as "insiders" under the Bankruptcy Code, as I have been advised such term is interpreted by bankruptcy courts in this district. No KERP Participant participates in the

overall management of the Debtor; in fact, to the extent that certain KERP Participants serve in a "management" role, such participants only manage discrete business functions within their respective areas of responsibility. No KERP Participant has independent, company-wide decision-making authority. No KERP Participant is a member of the Debtor's board of directors (the "Board"), was appointed by, or reports to (with the exception of the Director of Safety, as discussed below), either the Board or the Debtor's Chief Executive Officer, and no KERP Participant attends Board meetings.

6. In addition, the KERP Participants' duties are restricted to particular aspects or segments of the Debtor's business. The KERP Participants include employees from various functions, including, but not limited to, accounting, operations, human resources, information technology, and mechanical services. Notably, certain KERP Participants holding titles of "Director" or "Managing Director" are required pursuant to section 119 of the Federal Aviation Administration Regulations ("FAA Regulations"). The FAA Regulations require an operating certificate holder to have personnel serving full-time in the following or equivalent positions: (1) Director of Safety, (2) Director of Operations, (3) Chief Pilot, (4) Director of Maintenance, and (5) Chief Inspector (the "Section 119 Employees"). Although the Debtor is no longer operating, a limited retention of the Section 119 Employees is necessary to ensure the salability of the Debtor's Federal Aviation Administration Part 121 Air Carrier Certification (the "Certificate"), which allows the Debtor to operate as an airline providing air services to the public using larger commercial aircraft. Since filing for bankruptcy, the Debtor has been contacted by parties interested in purchasing its Certificate.

7. The Section 119 Employees are tasked with creating the Debtor's safety, maintenance and flight operation manuals, and overseeing the compliance of the standards set forth

therein.  As detailed above, none of the Section 119 Employees are responsible for creating company policy with respect to the oversight of the Debtor's strategic plan or determining the disposition of funds on strategic financing activities, nor are they granted any decision-making authority akin to an executive.  The FAA provides that the Director of Safety be permitted to report safety issues directly to the Board ensuring an independent line of communication regarding the safe operation of ExpressJet Airlines.  The remaining Section 119 Employees do not report to the Board, but rather report directly to me, in my capacity as President.

8. The KERP Participants holding the title of "Vice President" only manage discrete business functions within their respective departments—human resources and information technology.  Although critical to the wind down of the Debtor's business, neither Vice President has the authority to assert control over the Debtor's business.  Both Vice Presidents report to me, in my capacity as President, and must obtain approval from either me or the Chief Executive Officer before taking any significant action with respect to, among other things, the Debtor's company policies or the disposition of significant assets.

9. I believe that each KERP Participant is necessary to the orderly liquidation of the Debtor's assets.  Approval of the KERP on an interim basis is critical for the Debtor to retain key employees that may otherwise easily seek employment elsewhere.  To my knowledge, at least one KERP Participant has a standing offer of employment with another company.  I am also aware that other airline companies have already interviewed certain of the KERP Participants.  Therefore, the Debtor faces a very real risk of losing key employees, which could result in significant loss of value of the Debtor's remaining assets.  Any loss of value of the Debtor's assets will negatively impact recovery to the Debtor's estate and its creditors.

10. For the reasons stated above, and set forth in my Declaration, I believe the relief requested in the KERP Motion is in the best interest of the Debtor, its estate, its creditors and other parties in interest.

I certify under penalty of perjury that, based upon my knowledge, information and belief, as set forth in this Declaration, the foregoing is true and correct.

Executed: August 25, 2022

*/s/ John Greenlee*
John Greenlee
President
ExpressJet Airlines LLC