# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>**EXPRESSJET AIRLINES LLC,**<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 22-10787 (MFW)<br><br>**Hearing Date:**<br>November 10, 2022 at 11:30 a.m. (ET)<br>**Objection Deadline:**<br>November 3, 2022 at 4:00 p.m. (ET) |

### MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING (A) THE SALE OF THE DEBTOR'S INVENTORY AND AIRCRAFT PARTS TO PURCHASER FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE WAREHOUSE LEASE, AND (II) GRANTING RELATED RELIEF

The above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned counsel, respectfully moves (this "Motion") as follows:

### RELIEF REQUESTED

1. The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Sale Order"), (i) authorizing and approving the sale of the Debtor's inventory, consisting of Embraer ERJ 145 and E175 parts, tooling, and ground support equipment (the "Assets") to JSX Holdings, LLC (the "Purchaser"), free and clear of all liens, claims, and encumbrances; (ii) authorizing and approving the assumption and assignment of IAH Warehouse Master Lease, dated January 15, 2021 (the "Warehouse Lease"); and granting related relief.

---

[1] The last four digits of the Debtor's federal EIN are 4495. The Debtor's mailing address is P.O. Box 82392, 650 S. Central Ave., Atlanta, GA 30354.

2. In support of this Motion, the Debtor relies on and incorporates by reference the *Declaration of Jamie McElvaney in Support of the Debtor's Motion for Entry of an Order (I) Authorizing and Approving (A) the Sale of the Debtor's Inventory and Aircraft Parts to Purchaser Free and Clear of Liens, Claims, and Encumbrances and (B) the Assumption and Assignment of the Warehouse Lease, and (II) Granting Related Relief* (the "McElvaney Declaration"), and the *Declaration of John Greenlee in Support of the Debtor's Motion for Entry of an Order (I) Authorizing and Approving (A) the Sale of the Debtor's Inventory and Aircraft Parts to Purchaser Free and Clear of Liens, Claims, and Encumbrances and (B) the Assumption and Assignment of the Warehouse Lease, and (II) Granting Related Relief* (the "Greenlee Declaration"), both filed contemporaneously herewith.

## JURISDICTION

3. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The Debtor consents pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy

Code"), as supplemented by rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1.

## BACKGROUND

**I.    General Background**

6.    On August 23, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtor continues to manage its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee has been appointed in this case.

7.    Prior to filing for bankruptcy, the Debtor operated as a regional airline company with more than 40 years of experience. In particular, the Debtor operated its leisure brand aha! (short for "air ● hotel ● adventure"), which provided travelers in smaller communities with convenient, short, nonstop flights to and from the Reno-Tahoe International Airport. The Debtor also operated *ad hoc* charter flights. As of the Petition Date, the Debtor has ceased operating, canceled its scheduled and charter flights, terminated a substantial number of employees, and intends to liquidate its remaining assets.

**II.    The Prepetition Marketing Process**

8.    As more fully described in the *Declaration of John Greenlee in Support of Chapter 11 Petition and First Day Relief* (D.I. 2) (the "First Day Declaration"), in June 2022, the Debtor engaged Raymond James Financial Inc. to market the Debtor's business as a going concern to interested third-party investors. This marketing process included outreach to 350 parties, including 193 strategic and financial buyers and 157 lenders. Although the initial outreach generated interest in the business, by mid-July 2022, only one indication of interest was submitted and the Debtor was ultimately unable to identify a potential purchaser with sufficient capital to provide financing to the Debtor or to consummate a plan or acquisition. None of the

remaining parties that conducted diligence regarding the potential purchase of the Debtor's business or assets formally indicated their interest in a transaction.

### III. The Postpetition Sale Process

9.     The Debtor filed for chapter 11 protection to facilitate an orderly liquidation of the Debtor's assets and wind-down of its affairs to preserve and maximize value for the Debtor's estate and its creditors. A principal focus for the Debtor has been preserving the value of its remaining physical assets—comprising Embraer ERJ 145 and E175 parts, tooling, and ground support equipment. The aircraft parts in particular are of significant value if properly maintained and cataloged. To this end, the Debtor sought and obtained Court approval of a key employee retention plan designed to, among other things, retain the specialized personnel necessary to preserve the value of the Debtor's valuable assets.[2]

10.    As part of the Debtor's efforts to maximize value for its estate and creditors through a sale of the Assets, promptly after filing for bankruptcy the Debtor consolidated its inventory in a single warehouse facility in Houston, Texas, and began working on a complete inventory listing. The Debtor's management then developed a comprehensive list of potential purchasers for the Assets. Given the Debtor's expertise in its industry and knowledge of the Assets, the Debtor proposed its management, led by the Debtor's Director of Materials, Jamie McElvaney, market and sell the Assets. The Court agreed that the Debtor was in the best position to oversee the sale of the Assets in this chapter 11 case. *See* Sept. 15, 2022 Hr'g Tr. at 13:1–9.

---

[2] *See Final Order (I) Approving Debtor's Key Employee Retention Plan, (II) Granting Administrative Expense Priority Status to All Payments to Be Made By the Debtor Pursuant Thereto and (II) Granting Related Relief* (D.I. 95).

11. At a status conference on September 15, 2022, the Debtor outlined its proposed sale process for the Court and parties in interest. The Debtor proposed publicly advertising the Assets to generate interest in the industry. Any party who expressed an interest in purchasing the Assets would receive a request for proposal (the "RFP"). The Debtor proposed parties submit an intent to bid no later than September 23, 2022, at 5:00 p.m. (ET). Parties would then be required to submit an RFP no later than September 30, 2022, at 5:00 p.m. (ET). After the proposal submission deadline, the Debtor would evaluate the proposals and select a purchaser based on the highest and otherwise best proposal for the Assets. The Court approved the Debtor's proposed sale process, subject to the Debtor filing a notice detailing the process and applicable deadlines. *See* Sept. 15, 2022 Hr'g Tr. at 13:13–16. The Debtor filed the *Notice of Aircraft Parts Sale Process* that same day (D.I. 118).

12. Following the status conference, the Debtor immediately launched its sale process, advertising the Assets in industry-specific publications and online parts marketplaces. The Debtor provided the RFP to approximately 125 interested parties. Sixteen interested parties submitted an intent to bid on or before the September 23 deadline. The Debtor then invited each party that submitted an intent to bid to view and inspect the Assets on-site—and nine sent teams to inspect the Assets. The Debtor also responded to due diligence requests from potential purchasers and allowed potential purchasers to examine the supporting paperwork that the Assets were maintained and properly recorded in compliance with FAA regulations.

13. Sixteen parties submitted a proposal by the September 30, 2022 deadline with one grace day. The Debtor also accepted a seventeenth proposal following the proposal deadline. The Debtor's management evaluated each proposal and, where appropriate, engaged in arm's-length, good faith negotiations with potential purchasers to improve upon their submitted proposal. The Debtor decided to actively short-list six proposals that were more beneficial to the

Debtor's estate and its creditors. For these six proposals, the Debtor evaluated each proposal using a weighted matrix system that considered, among other things, net value to the estate, potential risks associated with consummating the proposed sale (including an assessment of the bidder's financial condition and references), satisfaction of all aspects of the RFP, and the specific Assets contemplated for purchase. On October 7, 2022, the Debtor selected the two bidders with the highest scores based on the matrix system as primary finalists and the bidders with the third and fourth highest scores as back-up finalists. Each of the finalists was provided an opportunity to refine their respective proposals. This process yielded several improvements from the short-listed finalists and a double-digit percentage increase in the ultimate purchase price for the Assets. After reviewing final proposals, the Debtor's management determined that the Purchaser's proposal was the highest and otherwise best proposal for the Assets.

14. After further negotiations, the Debtor and the Purchaser executed the Binding Term Sheet, which is attached hereto as **<u>Exhibit B</u>**.[3] The key terms are as follows[4]:

---

[3] Pursuant to the Term Sheet, the Debtor and the Purchaser have agreed to enter into an Asset Purchase Agreement and will promptly file the Asset Purchase Agreement under separate notice once executed and will be attached to the final proposed Sale Order as <u>Exhibit 1</u>.

[4] This summary is provided for the convenience of the Court and parties in interest. To the extent any inconsistencies exist between the summary provided in this Motion and the actual terms of the Asset Purchase Agreement, the Asset Purchase Agreement shall control. Capitalized terms not defined herein are used as defined in the Term Sheet.

| Term | Description |
|---|---|
| **Seller:** | ExpressJet Airlines LLC |
| **Purchaser:** | JSX Holdings, LLC |
| **Purchase Price:** | Total Purchase Price is $9,000,000. |
| **Purchased Assets:** | The Purchaser will purchase the Assets and certain Electronic Data associated with the Assets. The Assets comprises the Embraer ERJ145 and 175 parts and other parts, tooling and ground support equipment as described in the RFP. |
| **Assumed Liabilities: (Warehouse Lease)** | The Purchaser will relieve the Debtor of the Warehouse Lease through an assumption and assignment process.<br><br>If Purchaser is unable to relieve the Debtor of such obligation within 60 days of the date the Debtor invoices the Purchaser for the Assets and the Electronic Data is received by the Purchaser (the "Invoice Date"), it will (a) pay Debtor the Lease Fee amount specified in the Purchase Price and (b) remove, at its own cost, all of the Assets within 90 days of the Invoice Date.<br><br>The parties may extend the time in which the Purchaser may remain in possession by mutual agreement on a month-to-month basis at the monthly rate of the actual lease cost to the Debtor. |
| **Conditions to Closing:** | The material conditions and contingencies for the Purchaser's obligations to close include but are not limited to:<br><br>• Debtor has performed, satisfied and complied in all material respects with all obligations and covenants required by the Asset Purchase Agreement to be performed or complied with on or prior to the closing date.<br>• Debtor has executed and delivered to the Purchaser the Documentation and all other documents, schedules, and exhibits required under the Asset Purchase Agreement.<br>• The Purchaser has received any necessary third-party consents, the requirements of which have not been negated by an order of the Bankruptcy Court, and governmental approvals, in form and substance satisfactory to the Purchaser in its reasonable discretion.<br>• The Bankruptcy Court has entered the Sale Order and the Sale Order is a final and non-appealable order.<br>• The Sale Order is in a customary form for sales pursuant to section 363 of the Bankruptcy Code and provides that the sale of the Assets is (i) pursuant to section 363(f) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, interests, and rights of set-off, whether known or unknown, disputed, contingent, actual, or otherwise, arising prior to closing, (ii) to a good faith |

| | |
|---|---|
| | purchase, and (iii) to a purchaser with no successor liability.<br>• The Purchaser has not received any notice that, individually or in the aggregate, could be reasonably expected to be materially adverse to the condition (financial or otherwise) of the Assets.<br>• No event has occurred that, individually or in the aggregate, could be reasonably expected to result in a material adverse change in the condition (financial or otherwise) of the Assets. |
| **Deposit** | The Purchaser shall pay Debtor $1,000,000 (the "Deposit") within three business days of executing the Term Sheet.<br><br>The Deposit will be returned to the Purchaser if the Bankruptcy Court does not approve the transaction or if the Debtor's actions or omissions are the primary cause of the failure of the transaction.<br><br>The Purchaser will forfeit the Deposit if it does not pay the Debtor the Purchase Price (less the Deposit) within six business days of the Invoice Date. |
| **Break-Up Fee** | The Debtor will pay Purchaser $500,000 (the "Break-Up Fee") (in addition to refunding the Deposit) within six business days if the Debtor enters into a transaction with a different purchaser for the Assets, unless such other sale is pursuant to the Debtor's right to rescind under the Term Sheet.<br><br>The Break-Up Fee shall constitute an administrative expense claim pursuant to section 503(b) of the Bankruptcy Code and shall have priority over all other administrative expense claims. |
| **Outside Closing Date** | December 11, 2022 |

15. The following chart discloses certain information required to be disclosed pursuant to Local Rule 6004-1(b):

| **Term** | **Description** |
|---|---|
| **Sale to Insider**<br>*Local Bankr. R. 6004-1(b)(iv)(A)* | The Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. |
| **Agreements with Management**<br>*Local Bankr. R. 6004-1(b)(iv)(B)* | The Purchaser has not entered into any agreements with the Debtor's management. |
| **Releases**<br>*Local Bankr. R. 6004-1(b)(iv)(C)* | The Term Sheet contemplates a release in favor of the Purchaser (and its affiliates, agents, attorneys, and employees) for all causes of action and claims that the Debtor has or may have against the Purchaser, as of the |

| | |
|---|---|
| | closing. |
| **Private Sale/No Competitive Bidding**<br>*Local Bankr. R. 6004-1(b)(iv)(D)* | Consistent with the Debtor's proposed sale process and the *Notice of Aircraft Parts Sale Process*, the sale is a private sale. |
| **Closing and Other Deadlines**<br>*Local Bankr. R. 6004-1(b)(iv)(E)* | The sale to the Purchaser has an outside closing date of December 11, 2022. *See* Term Sheet, p. 8. |
| **Good Faith Deposit**<br>*Local Bankr. R. 6004-1(b)(iv)(F)* | The Term Sheet requires the Purchaser to provide a $1,000,000 deposit within three business days of executing the Term Sheet. *See* Term Sheet, p. 6. |
| **Interim Arrangements with Stalking Horse Bidder**<br>*Local Bankr. R. 6004-1(b)(iv)(G)* | Not applicable. |
| **Use of Proceeds**<br>*Local Bankr. R. 6004-1(b)(iv)(H)* | The Term Sheet does not specify a use or allocation of the sale proceeds, however, all of the net sale proceeds will be used to fund a portion of the Debtor's obligations as a debtor in possession and its obligations that arise under a plan of reorganization or liquidation. |
| **Tax Exemption**<br>*Local Bankr. R. 6004-1(b)(iv)(I)* | The Term Sheet provides that, to the extent permitted by law, the Debtor and the Purchaser agree to work together in good faith to minimize or eliminate any taxes related to the closing of the sale, including, but not limited to, sales, use, VAT, withholding, or other forms of taxation. *See* Term Sheet, p. 7. |
| **Record Retention**<br>*Local Bankr. R. 6004-1(b)(iv)(J)* | The Debtor's books and records will not be sold pursuant to the sale to the Purchaser. The Debtor will retain appropriate access to its books and records to enable it to administer this chapter 11 case. |
| **Sale of Avoidance Actions**<br>*Local Bankr. R. 6004-1(b)(iv)(K)* | Not applicable. |
| **Successor Liability**<br>*Local Bankr. R. 6004-1(b)(iv)(L)* | The Sale Order will include findings that the Purchaser is not a mere continuation of the Debtors or its estate, and that the Purchaser shall not have any successor liability of any kind or character. *See* Term Sheet, p. 5. |
| **Sale Free and Clear of Unexpired Leases**<br>*Local Bankr. R. 6004-1(b)(iv)(M)* | Not applicable. |
| **Credit Bid**<br>*Local Bankr. R. 6004-1(b)(iv)(N)* | Not applicable. |
| **Relief from Bankruptcy Rule 6004(h)**<br>*Local Bankr. R. 6004-1(b)(iv)(O)* | The Debtors seeks a waiver of the 14-day stay under Bankruptcy Rule 6004(h), as described in more detail below. |

9

**BASIS FOR RELIEF REQUESTED**

**I.    Sufficient business justification exists for consummation of the Sale under sections 105(a) and 363 of the Bankruptcy Code.**

16.    A debtor in possession may sell assets of the estate outside the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). The Court's power under section 363 is supplemented by section 105(a) of the Bankruptcy Code, which provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As set forth below, the Debtor submits that it has satisfied the requirements of sections 105 and 363 of the Bankruptcy Code.

17.    Although section 363(b) of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *In re Lionel Corp.*); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in *Abbotts Dairies*).

18.    The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*

*(In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

19. The Debtor submits that its decision to consummate the sale to the Purchaser represents a reasonable exercise of the Debtor's business judgment and, accordingly, the sale should be approved under sections 105(a) and 363 of the Bankruptcy Code. The Debtor has conducted an extensive, far-reaching process to market the Assets. The sale process was publicized, and the Debtor received significant interest in the Assets—approximately 125 parties expressed an interest and received the form RFP. Moreover, the Debtor provided each finalist an opportunity to refine their respective proposal, which yielded a double-digit percentage increase in the ultimate purchase price. Based on the Debtor's evaluation of the submitted proposals, the Debtor believes that the Term Sheet reflects the highest and otherwise best proposal for the Assets. The proposed sale will generate significant value for the Debtor's estate and represents the best available option for maximizing recoveries to the estate, the Debtor's creditors and all parties in interest.

## II. Approval of the proposed break-up fee is necessary.

20. This Court has acknowledged that a break-up fee is appropriate where it "is an essential inducement and condition of Buyer's entry into, and continuing obligations, under the APA." *In re WorldSpace, Inc.*, Case No. 08-12412 (PJW), 2010 WL 4739929, at *4 (Bankr. D. Del. June 2, 2010). Given the (i) Debtor's liquidity situation, (ii) the necessity of closing the Sale quickly, and (iii) the important benefits provided by this Purchaser over the other finalists, the Debtor submits that granting the break-up fee is necessary to closing the Sale and achieving the best value for the estate.

21. In addition, the break-up fee sought here is appropriate for a case of this size because bid protections reasonably reflect "the risk, effort, and expenses of the prospective

11

purchaser." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 662 (S.D.N.Y. 1992). The Debtor believes that the current proposed break-up fee is sufficient based on the risk, effort, and expenses involved in this Sale, and is within the range of other break-up fees approved in this District. *See, e.g.*, *In re Nirvanix, Inc.*, Case No. 13-12595 (BLS) (Bankr. D. Del. Oct. 23, 2013), (approving total bid protections of 11%—comprising a $150,000 break-up fee and $150,000 expense reimbursement for a $2,800,000 stalking horse bid); *In re First Place Fin. Corp.*, Case No. 12-12961 (BLS) (Bankr. D. Del. Nov. 26, 2012) (approving total bid protections of 6.6%—comprising a $3 million break-up fee and a $1 million expense reimbursement on a transaction with $60 million in aggregate consideration); *In re Hub Holding Corp., et al.*, Case No. 09-11770 (PJW) (Bankr. D. Del. June 30, 2009) (approving total bid protections of 6.43%—comprising a $2,880,000 break-up fee and $1,750,000 expense reimbursement for a $72,000,000 stalking horse bid.); *In re Fluid Routing Solutions Intermediate Holding Corp., et al.*, Case No. 09-10384 (CSS) (Bankr. D. Del. Feb. 19, 2009), (approving total bid protections of 6.82%—comprising a $750,000 break-up for an $11,000,000 stalking horse bid).

        22. If the Court does not authorize the Debtor to offer the break-up fee in accordance with the Term Sheet, the Purchaser may elect not to pursue and close the Sale, to the detriment of the Debtor's estate. Further, if the break-up fee were to be paid, it will be because the Debtor has received a higher or otherwise superior offer for the Assets. In short, the proposed break-up fee is fair and reasonable under the circumstances because it constitutes a "fair and reasonable percentage of the proposed purchase price" and is "reasonably related to the risk, effort, and expenses of the prospective purchaser." *Integrated Res.*, 147 B.R. at 662 (quoting *995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989)). Therefore, the break-up fee is appropriate under the circumstances of this case and should be approved.

### III. The Sale of the Assets free and clear of all encumbrances is authorized under section 363(f) of the Bankruptcy Code.

23. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, encumbrances, and other interests if:

    i. Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    ii. Such entity consents;

    iii. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    iv. Such interest is in bona fide dispute; or

    v. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens, claims, encumbrances, and other interests. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same).

24. The Debtor submits that it is appropriate to sell the Assets on a final "as is" basis, free and clear of any and all encumbrances because one or more of the tests of section 363(f) are satisfied with respect to the sale to the Purchaser. The Debtor submits that the Purchaser will not consummate the Sale absent the ability to purchase the Assets free and clear of all interests. Moreover, the Debtor believes that the only asserted lien on the Assets relates to a tax lien. The Debtor has negotiated an adequate protection arrangement with such creditor and

thus intends to obtain the consent of such creditor such that section 363(f)(2) will apply. Otherwise, to the extent any party contends that it holds a valid lien on the Assets, such lien is subject to bona fide dispute, and the Debtor may sell the Assets free and clear of such purported lien under section 363(f)(4) of the Bankruptcy Code. Therefore, the Debtor requests that the Sale be approved free and clear of all liens, claims, interests, and encumbrances.

**IV.    The sale should be subject to the protections of section 363(m) of the Bankruptcy Code.**

25.    Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good faith," the Third Circuit in *Abbotts Dairies* held that the misconduct that would destroy a purchaser's good faith status at a judicial sale typically involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." 788 F.2d at 147 (citation omitted).

26.    The terms and conditions of the sale of the Assets have been negotiated by the Debtor and the Purchaser at arm's length and in good faith, with the assistance of the Debtor's advisors, and that the parties did not engage in any conduct that would cause or permit the sale to be avoided under section 363(n) of the Bankruptcy Code. Accordingly, the Debtor requests that the Court find that the sale was negotiated and executed in good faith and that such purchase will be entitled to the full protections of section 363(m) of the Bankruptcy Code.

**V.    Assumption and assignment of the Warehouse Lease is warranted under 11 U.S.C. § 365(a).**

27.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 COLLIER ON BANKRUPTCY ¶ 365.01[1] (15th ed. 1993)).

28.    The standard applied to determine whether the assumption of a contract or an unexpired lease should be authorized is the "business judgment" standard. *See In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (finding that a debtor's decision to assume or reject an executory contract will stand so long as "a reasonable business person would make a similar decision under similar circumstances."); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (stating a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the product of bad faith, whim, or caprice). As described above, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company.'" *Integrated Res., Inc.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d at 872).

29.    The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See id.*; *see also Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60

15

B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions."). Generally, courts defer to a debtor in possession's business judgment to assume or reject an executory contract or lease. *See Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (stating that the business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the executory contract will benefit the estate."); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 42–43 (2d Cir. 1979); *In re Riodizio, Inc.*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

30. Here, the Debtor exercised its sound business judgment in determining that the potential assumption and assignment of the Warehouse Lease is in the best interests of the Debtor and its estate. As detailed above, the Debtor is no longer operating its business and, following consummation of the sale to the Purchaser, will have no need for the Warehouse Lease. If the Purchaser decides to forego the assumption and assignment of the Warehouse Lease, the Purchaser has agreed to remove the Assets at its own cost from the facility within ninety days (or on a further extended month-to-month basis as agreed by the Debtor and the Purchaser) and will pay the Lease Fee to cover the Debtor's rent payments during that time.

31. Relatedly, section 365(f)(2) of the Bankruptcy Code provides that a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2). The words "adequate assurance of future performance" must be given a "practical, pragmatic construction" in light of the facts and circumstances of the proposed assumption. *See In re Fleming Cos., Inc.*, 499 F.3d 300, 307 (3d Cir. 2007) (internal citation

omitted); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (same); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (finding that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and profit).

33. As set forth above, the Debtor will be assigning the Warehouse Lease to the Purchaser, who has been selected due to its financial condition and ability to consummate the sale of the Assets. The Debtor submits that the Purchaser's financial condition provides sufficient adequate assurance of future performance, and that the assignment of the Warehouse Lease to the Purchaser as part of the sale should be approved. To the extent the landlord to the Warehouse Lease requests adequate assurance information, the Debtor will work with the Purchaser to provide such information upon request.

## **WAIVER OF STAY UNDER BANKRUPTCY RULES 6004(h) AND 6006(d)**

33. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Furthermore, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d). As discussed above, the relief requested in this Motion is necessary for the Debtor to preserve and maximize the value of its Assets for the benefit of the Debtor's estate and its creditors. Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

34. Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtor, (ii) a waiver of the Debtor's rights to dispute any claim, (iii) a promise or requirement to pay any claims, (iv) a waiver of any claim or cause of action of the Debtor that exists against any entity, (v) a ratification or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code, except as expressly provided herein, (vi) a waiver or limitation of the Debtor's rights under the Bankruptcy Code, any other applicable law, or any agreement, or (vii) an admission or concession by the Debtor that any lien acknowledged or satisfied under this Motion is valid, and the Debtor expressly reserves and preserves its rights to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

## NOTICE

35. Notice of this Motion shall be provided to: (i) the Office of the United States Trustee; (ii) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (iii) the Purchaser; (iv) all parties with a particularized interest in the Assets; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) the United States Attorney's Office for the District of Delaware; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that no further notice of this Motion is required under the circumstances.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of the Sale Order substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other further relief as may be just and proper.

Dated: October 20, 2022  MORRIS, NICHOLS, ARSHT & TUNNELL LLP
      Wilmington, Delaware

*/s/ Sophie Rogers Churchill*
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
Jonathan M. Weyand (No. 6959)
Sophie Rogers Churchill (No. 6905)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
eschwartz@morrisnichols.com
mharvey@morrisnichols.com
ptopper@morrisnichols.com
jweyand@morrisnichols.com
srchurchill@morrisnichols.com

*Counsel to the Debtor and Debtor in Possession*