**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| **EXPRESSJET AIRLINES LLC,** | Case No. 22-10787 (MFW) |
| Debtor.[1] | |

**FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11
PLAN OF REORGANIZATION OR LIQUIDATION PROPOSED BY THE DEBTOR**

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
Jonathan M. Weyand (No. 6959)
Sophie Rogers Churchill (No. 6905)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
eschwartz@morrisnichols.com
mharvey@morrisnichols.com
ptopper@morrisnichols.com
jweyand@morrisnichols.com
srchurchill@morrisnichols.com

*Counsel to the Debtor and Debtor in Possession*

December 20, 2022

---

[1] The last four digits of the Debtor's federal EIN are 4495. The Debtor's mailing address is P.O. Box 82392, 650 S. Central Ave., Atlanta, GA 30354.

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

DISCLAIMER ................................................................................................1

INTRODUCTION ..........................................................................................2

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION .......................4

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED RECOVERIES ............................................................................................16

| | | |
|---|---|---|
| **2.1** | **General Rules of Classification** | **16** |
| **2.2** | **Unimpaired Classes of Claims** | **19** |
| **2.3** | **Impaired Classes of Claims** | **19** |
| **2.4** | **Impaired Class of Equity Interests** | **20** |

ARTICLE III BACKGROUND AND DISCLOSURES ..................................................20

| | | |
|---|---|---|
| **3.1** | **General Background** | **20** |
| **3.2** | **Events Leading to Chapter 11** | **21** |
| **3.3** | **The Chapter 11 Case** | **21** |

ARTICLE IV CONFIRMATION AND VOTING PROCEDURES .................................25

| | | |
|---|---|---|
| **4.1** | **Confirmation Procedure** | **25** |
| **4.2** | **Procedure for Objections** | **26** |
| **4.3** | **Requirements for Confirmation** | **26** |
| **4.4** | **Classification of Claims and Interests** | **26** |
| **4.5** | **Impaired Claims or Interests** | **27** |
| **4.6** | **Confirmation Without Necessary Acceptances; Cramdown** | **28** |
| **4.7** | **Feasibility** | **29** |
| **4.8** | **Best Interests Test and Liquidation Analysis** | **30** |
| **4.9** | **Acceptance of the Plan** | **31** |

ARTICLE V CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ............................................................................................31

| | | |
|---|---|---|
| **5.1** | **The Plan May Not Be Accepted** | **31** |
| **5.2** | **The Plan May Not Be Confirmed** | **32** |
| **5.3** | **Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections** | **32** |
| **5.4** | **Objections to Classification of Claims** | **32** |
| **5.5** | **Failure to Consummate the Plan** | **33** |
| **5.6** | **Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan** | **33** |

**5.7**      **Plan Releases May Not Be Approved**................................................**33**
**5.8**      **The Reorganization Toggle May Not be Achieved.** ..................**33**
**5.9**      **The Reorganization Transaction May Fail to Close.** ..............**34**
**5.10**    **Certain Tax Considerations** ................................................**34**

ARTICLE VI TREATMENT OF UNCLASSIFIED CLAIMS........................34

**6.1**      **Administrative Claims**......................................................**34**
**6.2**      **Fee Claims**..........................................................................**35**
**6.3**      **Priority Tax Claims** .........................................................**36**

ARTICLE VII TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............36

**7.1**      **Class 1: Secured Claims** ..................................................**36**
**7.2**      **Class 2: Other Priority Claims** .....................................**36**
**7.3**      **Class 3: Convenience Claims..** .........................................**37**
**7.4**      **Class 4: General Unsecured Claims** ..............................**37**
**7.5**      **Class 5: Subordinated Claims** .......................................**37**
**7.6**      **Class 6: Equity Interests**.................................................**37**
**7.7**      **Reservation of Rights Regarding Claims and Interests** ......**37**

ARTICLE VIII ACCEPTANCE OR REJECTION OF THE PLAN ...............37

**8.1**      **Classes Entitled to Vote** ..................................................**37**
**8.2**      **Acceptance by Impaired Classes of Claims or Interests** ......**37**
**8.3**      **Presumed Acceptance by Unimpaired Classes**...................**38**
**8.4**      **Presumed Rejections by Impaired Classes**........................**38**
**8.5**      **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**................................................................................**38**
**8.6**      **Controversy Concerning Impairment**................................**38**
**8.7**      **Elimination of Vacant Classes** .......................................**38**

ARTICLE IX MEANS OF IMPLEMENTING THE LIQUIDATION TOGGLE PLAN 38

**9.1**      **Post-Effective Date Debtor; Plan Administrator** .................**38**
**9.2**      **Cancellation of Instruments and Documents..** .....................**42**
**9.3**      **Reduction in Authorized Membership Interests and Issuance of Single Membership Interest to Plan Administrator.** .............**42**
**9.4**      **Post-Effective Date Professional Fees and Expenses.** ...........**42**
**9.5**      **Disposition of Books and Records.** ...................................**43**
**9.6**      **Release of Liens** ...............................................................**43**
**9.7**      **Exemption from Certain Transfer Taxes** ...........................**43**
**9.8**      **Setoffs**...............................................................................**43**
**9.9**      **Withdrawal of Plan**..........................................................**43**
**9.10**    **Insurance Preservation**....................................................**43**

ARTICLE X ........................................................................................................44

    10.1    **Liquidating Trust.** ..............................................................**44**
    10.2    **Liquidating Trustee.** .........................................................**45**
    10.3    **Vesting of Reorganization Assets in Reorganized Debtor**.............**45**
    10.4    **Restructuring Transactions.** ............................................**45**
    10.5    **Cancellation of Existing Equity Interests; Issuance of New Equity Interest..** ....................................................................**45**
    10.6    **Plan Sponsor Contribution.** ............................................**46**
    10.7    **Corporate Existence.** ........................................................**46**
    10.8    **Directors and Officers of the Reorganized Debtor.** ..............**46**
    10.9    **Cancellation of Instruments and Documents.** .....................**46**
    10.10  **Release of Liens** ...............................................................**46**
    10.11  **Exemption from Certain Transfer Taxes** ............................**46**
    10.12  **Setoffs** ............................................................................**46**
    10.13  **Withdrawal of Plan** ..........................................................**47**
    10.14  **Insurance Preservation** ....................................................**47**

ARTICLE XI EFFECT OF PLAN ON CLAIMS AND INTERESTS.............................47

    11.1    **Binding Effect** .................................................................**47**
    11.2    **Compromise and Settlement** ...........................................**47**
    11.3    **No Discharge of the Debtor in Liquidation Toggle.** .............**47**
    11.4    **Injunction to Protect Estate Assets in Liquidation Toggle** ........**48**
    11.5    **Discharge of the Debtor in Reorganization Toggle.**Error! Bookmark not defined.
    11.6    **Discharge Injunction in Reorganization Toggle. ....**Error! Bookmark not defined.
    11.7    **Exculpation** ....................................................................**49**
    11.8    **Releases by the Debtor** .....................................................**49**
    11.9    **Releases by Holders of Claims** .........................................**50**
    11.10  **Indemnification Obligations** ............................................**50**
    11.11  **Terms of Injunctions or Stays** ..........................................**51**

ARTICLE XII EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................51

    12.1    **Executory Contracts and Unexpired Leases Deemed Rejected**...........**51**
    12.2    **Supplemental Bar Date for Rejection Damages.** ..................**51**
    12.3    **Assumption of Executory Contracts in the Reorganization Toggle..** ..........................................................................**51**

ARTICLE XIII RESERVES AND DISTRIBUTIONS ......................................................52

    13.1    **Establishment of Reserves** ..............................................**52**
    13.2    **Funding of Certain Reserves** ...........................................**52**
    13.3    **Distributions for Claims Allowed as of the Effective Date**...................**53**
    13.4    **No Distributions on Disputed Claims**.................................**53**

**13.5**    **Distributions on Claims Allowed After the Effective Date** ..................**53**

**13.6**    **Objections to and Estimation of Claims** ....................................**53**

**13.7**    **Delivery of Distributions and Undeliverable or Unclaimed Distributions** ...............................................................................**54**

**13.8**    **Interest on Claims** ......................................................................**55**

**13.9**    **Withholding and Reporting Requirements** ...............................**55**

**13.10**    **Miscellaneous Distribution Provisions** .....................................**56**

**13.11**    ***De Minimis* Distribution Provisions** .........................................**56**

**13.12**    **Distribution Record Date** ..........................................................**56**

**13.13**    **Residual Assets** ..........................................................................**56**

ARTICLE XIV CONFIRMATION AND CONSUMMATION OF THE PLAN.............57

**14.1**    **Conditions to Confirmation** ......................................................**57**

**14.2**    **Conditions to Effective Date** .....................................................**57**

**14.3**    **Consequences of Non-Occurrence of Effective Date** ...........................**58**

ARTICLE XV ADMINISTRATIVE PROVISIONS ........................................................**58**

**15.1**    **Retention of Jurisdiction** ...........................................................**58**

**15.2**    **Amendments** ...............................................................................**60**

**15.3**    **Successors and Assigns** ..............................................................**60**

**15.4**    **Governing Law** ...........................................................................**60**

**15.5**    **Corporate Action** .......................................................................**61**

**15.6**    **Effectuating Documents and Further Transactions** ...........................**61**

**15.7**    **Confirmation Order and Plan Control** .....................................**61**

**15.8**    **Miscellaneous Rules.** ..................................................................**61**

**15.9**    **Notices** .........................................................................................**61**

**15.10**    **No Admissions or Waiver** ..........................................................**62**

## DISCLAIMER

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN WHAT IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. NO REPRESENTATIONS CONCERNING THE DEBTOR, OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST.  THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3016(b), AND LOCAL RULE 3017-2, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SEC

NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

SEE ARTICLE V OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## INTRODUCTION

ExpressJet Airlines LLC, the debtor and debtor in possession in this chapter 11 case, proposes the following combined Disclosure Statement and Plan for the reorganization or liquidation of the Debtor's remaining assets and distribution of the proceeds of the Estate's assets to the Holders of Allowed Claims against the Debtor as set forth herein.  The Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

This combined Disclosure Statement and Plan contains, among other things, a discussion of the Debtor's history, business, properties, the chapter 11 case, risk factors, summary and analysis of this Plan, and certain other related matters.

ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

At the time of confirmation of the Plan, the Debtor has or will have sold substantially all its assets, other than the Reorganization Assets.  The Debtor is separately conducting a monetization process for the Reorganization Assets, as set forth in section 3.3(f) of the combined Disclosure Statement and Plan.  If the Debtor does not select a transaction proposal for the Reorganization Assets, then this Plan will be a liquidating plan pursuant to which all the net proceeds of the sale(s) of the Debtor's assets (other than the DOT Certificate and FAA Certificate) will be distributed by the Plan Administrator to Holders of Allowed Claims on or after the Effective Date, and the Debtor will be dissolved after the Effective Date at the Plan Administrator's discretion.  This liquidating Plan scenario is referred to as the "Liquidation Toggle" and is discussed in greater detail throughout this combined Disclosure Statement and Plan, particularly in Article IX, Means of Implementing the Liquidation Toggle Plan.  Under the Liquidation Toggle, any remaining assets, such as Causes of Action, will re-vest in the Post-Effective Date Debtor and be pursued or settled by the Plan Administrator in his or her discretion. The Plan Administrator will also administer and object to or settle claims against the Debtor, as

appropriate, and make distributions to Holders of Allowed Claims.  The following depicts the Liquidation Toggle:[2]

Liquidation Toggle



If the Debtor elects to pursue a transaction for the Reorganization Assets, then the monetization of those assets will be implemented through a chapter 11 plan of reorganization.  This scenario is referred to as the "Reorganization Toggle" and is discussed in greater detail throughout this combined Disclosure Statement and Plan, particularly in Article X, Means of Implementing the Reorganization Toggle Plan.  Under the Reorganization Toggle, the Entity that makes the highest and otherwise best offer for the Reorganization Assets will be selected as the Plan Sponsor.  The Plan Sponsor will make the Plan Sponsor Contribution in exchange for 100% of the equity of the Reorganized Debtor, and the Reorganized Debtor will receive a discharge of all Claims against it on the Effective Date, except as expressly stated otherwise in the Plan, the Plan Documents or the Confirmation Order.  The Reorganization Assets will vest in the Reorganized Debtor free and clear of all liens, claims, encumbrances and interests.

---

[2]     The depictions of the Liquidation Toggle and Reorganization Toggle are for illustrative purposes only and are qualified in their entirety by the text of the Plan.

On the Effective Date under the Reorganization Toggle, a Liquidating Trust will be established, and the Debtor's assets will vest in the Liquidating Trust as the Liquidating Trust Assets. The Liquidating Trust Assets will, similar to the Liquidation Toggle, comprise the net proceeds of the sale(s) of the Debtor's assets, claims and Causes of Action, in addition to the Plan Sponsor Contribution net proceeds. The Liquidating Trustee will pursue or settle Causes of Action in his, her or its discretion. The Liquidating Trustee will also administer and object to or settle claims against the Debtor, as appropriate, and make distributions to Holders of Allowed Claims. The following depicts the Reorganization Toggle:

<u>Reorganization Toggle</u>



## ARTICLE I
## <u>DEFINED TERMS AND RULES OF INTERPRETATION</u>

**Defined Terms**

1.1     "503(b)(9) Claims" means Claims that are entitled to administrative expense priority pursuant to sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code.

1.2     "Administrative Claim" means an unsecured Claim, including a Fee Claim and U.S. Trustee Fees, for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate (such as wages, salaries, or commissions for services rendered), and 503(b)(9) Claims.

1.3     "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4

1.4    "Allowed" means, with respect to a Claim in a specified Class or an Allowed Administrative Claim, Priority Tax Claim, or Fee Claim, such Claim is: (i) scheduled by the Debtor in its Schedules in a liquidated amount and not scheduled as contingent or disputed and not superseded by a proof of claim or subject to setoff; (ii) asserted in the chapter 11 case by a proof of claim which has been timely filed, or late filed with leave of Court; and not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan, and/or applicable orders of the Bankruptcy Court; or (iii) that has been allowed by a Final Order or stipulation with the Debtor, the Plan Administrator, the Liquidating Trustee or the Reorganized Debtor, as the case may be, pursuant to this Plan. An Allowed Claim: (y) includes a previously Disputed Claim to the extent such Disputed Claim becomes allowed when the context so requires; and (z) shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of this Plan.

1.5    "Amended Schedules Bar Date" has the meaning ascribed to it in section 3.3(g).

1.6    "Ballot" means the form approved by the Bankruptcy Court and distributed to Holders of Claims entitled to vote on this Plan on which is to be indicated an acceptance or rejection of this Plan and, to the extent desired by the voting Claim Holder, an election to opt in to granting the Plan's third party releases described in section 11.9 of the Plan.

1.7    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to this chapter 11 case.

1.8    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

1.9    "Bankruptcy Rules" mean the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms or the Local Rules of the Bankruptcy Court, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to this chapter 11 case.

1.10    "Bar Date" means, with respect to any particular Claim, the applicable date set by the Bankruptcy Court as the last day for filing a proof of claim or a request for allowance of an Administrative Claim or a proof of interest, against the Debtor in this chapter 11 case for the applicable Claim or Interest.

1.11    "Bar Date Motion" means the *Debtor's Motion for Entry of an Order (I) Establishing Certain Bar Dates for Filing Prepetition Claims and Administrative Expense Claims, and (II) Granting Related Relief, Including Notice and Filing Procedures* (D.I. 134).

1.12    "Bar Date Order" means the *Order (I) Establishing Certain Bar Dates for Filing Prepetition Claims and Administrative Expense Claims, and (II) Granting Related Relief, Including Notice and Filing Procedures* (D.I. 154).

1.13    "Business Day" means any day, other than a Saturday, Sunday or a legal holiday (as used in Bankruptcy Rule 9006(a)).

1.14    "Cash" means legal tender of the United States of America or its equivalents, including but not limited to bank deposits, checks, and other similar items.

1.15    "Causes of Action" mean any and all actions, suits, claims for relief, causes of action, Chapter 5 Causes of Action, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether arising before or after the Petition Date.

1.16    "Chapter 5 Causes of Action" mean any and all actual or potential claims and causes of action arising or assertable pursuant to Chapter 5 of the Bankruptcy Code, including claims, rights and causes of action arising or assertable under sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code, including but not limited to, the recovery of preferences and fraudulent transfers from any entity that received cash or any other interest in property from or on behalf of the Debtor, directly or indirectly.

1.17    "Claim" means a claim against the Debtor or its property, as such term is defined in section 101(5) of the Bankruptcy Code.

1.18    "Claims Agent" means the Debtor's claims agent, Epiq Corporate Restructuring, LLC.

1.19    "Claims Objection Deadline" means 90 days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court; *provided*, *however*, that the Plan Administrator or Liquidating Trustee, as applicable, may seek extensions of this deadline from the Bankruptcy Court.

1.20    "Class" means a class of Claims or Interests described in Article II of this Plan.

1.21    "Confirmation Date" means the date the Bankruptcy Court enters the Confirmation Order on the docket of the chapter 11 case.

1.22    "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

1.23    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

1.24    "Convenience Claim" means any Claim that would otherwise be classified as a General Unsecured Claim but, with respect to each Claim, either (a) the aggregate amount of such claim is $5,000 or less, or (b) the aggregate amount of such Claim is reduced to $5,000 by agreement of the Holder of such Claim on or before the Voting Deadline through election on such Holder's Ballot with respect to such Claim.

1.25    "Cure Amount" means all pre- and postpetition amounts payable pursuant to section 365(b)(1) of the Bankruptcy Code in order to effectuate the Debtor's assumption of an Executory Contract pursuant to the Plan.

1.26    "D&O" means any current or former officer, director, or manager of the Debtor, solely in his or her capacity as such.

1.27    "De Minimis Asset Sale Procedures Order" means the *Order Approving Procedures for the Sale of* De Minimis *Assets Free and Clear of Liens, Claims, Interests, and Encumbrances* (D.I. 126), entered by the Bankruptcy Court on September 16, 2022.

1.28    "Debtor" means ExpressJet Airlines LLC.

1.29    "Disallowed" means with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtor, the Plan Administrator or Liquidating Trustee, as the case may be, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules in a zero or undetermined dollar amount or as disputed, contingent, partially liquidated or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) was not timely or properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (viii) is held by a Holder from whom property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or who is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Holder has paid the amount, or turned over any such property, for which such Holder is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code.  In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

1.30    "Disclosure Statement" means the disclosure statement, as amended, supplemented or modified from time to time, that is embodied within this combined Disclosure Statement and Plan and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3017, Local Rule 3017-2 and other applicable law.

1.31    "Disputed Claim" means any Claim or Interest which has not yet been Allowed or Disallowed in accordance with the terms of this Plan.  For the purposes of this Plan, a Claim shall be considered a Disputed Claim in its entirety before the time that an objection has been or may be filed if: (a) the amount or classification of the Claim specified in a relevant proof of claim exceeds the amount or classification of any corresponding Claim scheduled in the Debtor's Schedules; (b) any corresponding Claim scheduled by the Debtor has been scheduled as disputed, contingent or unliquidated; or (c) no corresponding Claim has been scheduled by the Debtor in its Schedules.

1.32    "Distribution" means the distribution of Cash or other property, as the case may be, in accordance with this Plan.

1.33    "Distribution Address" means the address where payments to the Holder should be sent as set forth in the Holder's proof of claim, as amended or supplemented.  If no proof of claim is filed with respect to a particular Claim, such defined term means the address for the Holder set forth in the Debtor's Schedules.

1.34    "Distribution Date" means the date on which a Distribution is made pursuant to this Plan.

1.35    "Distribution Record Date" means the record date for purposes of making Distributions under this Plan on account of Allowed Claims, which shall be the later of (a) the Confirmation Date and (b) the applicable Bar Date established by the Bar Date Order.

1.36    "DOT" means the United States Department of Transportation.

1.37    "DOT Certificate" means the Debtor's dormant certificate of public convenience and necessity to engage in scheduled interstate air transportation as issued by the DOT.

1.38    "Effective Date" means the first date on which all the conditions of section 14.2 of the Plan have been satisfied or have been waived in writing.

1.39    "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.40    "Estate" means the estate of the Debtor created by section 541 of the Bankruptcy Code on the Petition Date.

1.41    "Exculpated Parties" means the (a) Debtor, (b) each of the Debtor's current officers and directors, and former officers and directors who served in such capacity during any portion of the chapter 11 case following the Petition Date, (c) the Professionals, and (d) the Debtor's employees who were employed during any portion of the chapter 11 case following the Petition Date.

1.42    "Executory Contract" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.43    "Existing Equity Interest" means any Interest in the Debtor that existed immediately before the Effective Date.

1.44    "ExpressJet" means ExpressJet Airlines LLC.

1.45    "FAA" means the Federal Aviation Administration.

1.46    "FAA Certificate" means the Debtor's 14 CFR Part 121 certificate issued by the FAA.

8

1.47    "Fee Claim" means a Claim for compensation or reimbursement of expenses of a Professional pursuant to section 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the chapter 11 case.  "Fee Claim" does not include any Claim for compensation or reimbursement of expenses related to services rendered after the Effective Date by, as the case may be, the Professionals of the Plan Administrator, Liquidating Trust, Post-Effective Date Debtor or Reorganized Debtor.

1.48    "File," "Filed," or "Filing" means, respectively, properly file, filed, or filing in this chapter 11 case with the Bankruptcy Court or, where permitted or required, Epiq.

1.49    "Final Administrative Claim Bar Date" means the date that is 30 days after the Effective Date, which shall be the deadline for filing requests for payment of Administrative Claims, other than Fee Claims, that arose on or after October 1, 2022, through the Effective Date.

1.50    "Final Order" means an order or judgment of the Bankruptcy Court, as entered on the docket of the Bankruptcy Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the appeal has been dismissed by the appellant or by agreement; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.51    "First Administrative Claim Bar Date" is defined in section 3.3(g).

1.52    "General Bar Date" is defined in section 3.3(g) hereof.

1.53    "General Unsecured Claim" means any Claim that is not (a) an Administrative Claim; (b) a Fee Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) a Secured Claim; (f) a Convenience Claim; or (g) a Subordinated Claim.

1.54    "General Unsecured Claim Distribution Fund" means Cash available for distribution to the Holders of Allowed General Unsecured Claims as determined by the Plan Administrator or Liquidating Trustee, as applicable, from time to time in accordance with Article XIII of this Plan.  Under the Liquidation Toggle, at any given time after the Effective Date, the General Unsecured Claim Distribution Fund shall be the amount of undistributed Cash held by the Post-Effective Date Debtor that is not required for (a) the payment of Allowed Administrative Claims, Fee Claims, Priority Tax Claims, Secured Claims, Other Priority Claims, and Convenience Claims; and (b) the establishment and funding of the reserves (including any reserves for Disputed Claims and the Wind-Down Expense Reserve) in accordance with Article XIII of this Plan.  Under the Reorganization Toggle, the General Unsecured Claim Distribution Fund shall be the amount of undistributed Cash held by the Debtor as of the Effective Date plus net proceeds from the Plan Sponsor Contribution that is not required for (a) the payment of Allowed Administrative Claims,

Fee Claims, Priority Tax Claims, Secured Claims, Other Priority Claims, and Convenience Claims; and (b) the establishment and funding of the reserves (including any reserves for Disputed Claims and the Wind-Down Expense Reserve) in accordance with Article XIII of this Plan.

1.55    "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.56    "Government Bar Date" is defined in section 3.3(g) hereof.

1.57    "Holder" or "Holders" means a Person or an Entity holding a Claim or Interest.

1.58    "Impaired" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.59    "Impaired Class" means a Class of Claims or Interests that is Impaired.

1.60    "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.61    "Interest" means an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtor.

1.62    "Interim Approval and Procedures Order" means the *Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Combined Disclosure Statement and Plan; (III) Approving the Form of Ballots and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Disclosures in, and Confirmation of, the Combined Disclosure Statement and Plan; and (VI) Granting Related Relief* (D.I. 243).

1.63    "Interim Compensation Procedures Order" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* (D.I. 155), entered by the Bankruptcy Court on September 29, 2022.

1.64    "Lien" means: (a) a judicial lien as defined in section 101(36) of the Bankruptcy Code; (b) a lien as defined in section 101(37) of the Bankruptcy Code; (c) a security interest as defined in section 101(51) of the Bankruptcy Code; (d) a statutory lien as defined in section 101(53) of the Bankruptcy Code; and (e) any other lien, interest, charge or encumbrance.

1.65    "Liquidation Toggle" means the Debtor's election to pursue this Plan as a plan of liquidation as described in the Introduction of this combined Disclosure Statement and Plan.

1.66    "Liquidating Trust" means the trust to be created under the Reorganization Toggle on the Effective Date for the benefit of the Holders of Allowed Claims.

1.67    "Liquidating Trust Agreement" means, as may be amended from time to time, the trust agreement to be filed as part of the Plan Supplement if the Reorganization Toggle is selected, which will, among other things: (a) establish and govern the Liquidating Trust; (b) set forth the respective powers, duties and responsibilities of the Liquidating Trustee; and (c) provide for Distributions to Holders of Allowed Claims in accordance with Article X hereof.

1.68    "Liquidating Trust Assets" means, if the Debtor selects the Reorganization Toggle, all assets of the Debtor, including the Plan Sponsor Contribution, and excluding only the Reorganization Assets.

1.69    "Liquidating Trustee" means an individual, to be identified in the Plan Supplement, who will be appointed under the Reorganization Toggle, if applicable, as of the Effective Date, as trustee of the Liquidating Trust and shall be responsible for the duties, powers, and affairs of the Liquidating Trust in accordance with the Liquidating Trust Agreement.

1.70    "Local Rules" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.71    "Manuals and Materials" means "approved" and "accepted" manuals for the Debtor's FAA Certificate, as well as partial inflight and flight operations training materials.

1.72    "New Equity Interests" means 100% of the new equity of the Reorganized Debtor to be issued to the Plan Sponsor in exchange for the Plan Sponsor Contribution in the event of the Reorganization Toggle.

1.73    "Objection" means any objection, application, motion, complaint or any other legal action seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate or estimate any Claim (including any objection or opposition to any request for allowance or payment of any Administrative Claim).

1.74    "Other Priority Claim" means any Claim entitled to priority under section 507(a) of the Bankruptcy Code that is not a Priority Tax Claim.

1.75    "Person" is defined in section 101(41) of the Bankruptcy Code.

1.76    "Petition Date" means August 23, 2022, the date the Debtor commenced its chapter 11 case in the Bankruptcy Court.

1.77    "Plan" means this plan of reorganization or liquidation under chapter 11 of the Bankruptcy Code, together with any amendments or modifications hereto as the Debtor may file hereafter in accordance with the terms of this Plan (such amendments or modifications only being effective upon compliance with section 15.2 of the Plan).

1.78    "Plan Administrator" means the Person appointed pursuant to the Liquidation Toggle scenario in this Plan to carry out the wind-down of the Debtor and its Estate and to otherwise implement the Plan following the Effective Date. The initial Plan Administrator shall be selected by the Debtor and identified in the Plan Supplement.

1.79    "Plan Claim Reserve" has the meaning ascribed to it in section 13.1 of the Plan.

1.80    "Plan Documents" means the documents, other than this Plan, to be executed, delivered, assumed or performed in connection with the consummation of this Plan, including, without limitation, the documents to be included in the Plan Supplement, and any and all exhibits to the Plan and the Disclosure Statement.

1.81    "Plan Sponsor" means, as applicable, the Entity selected by the Debtor to fund and implement the Reorganization Toggle.  The Plan Sponsor will make the Plan Sponsor Contribution to the Debtor or the Liquidating Trust in exchange for the New Equity Interests.

1.82    "Plan Sponsor Contribution" means, if the Reorganization Toggle is selected, the Cash and other consideration (if applicable) contributed to the Debtor or Liquidating Trust by the Plan Sponsor in exchange for the New Equity Interests.

1.83    "Plan Supplement" means the supplemental appendix to this Plan, filed with the Bankruptcy Court not less than seven (7) calendar days before the Voting Deadline, which may contain, among other things and as applicable, (i) in the case of the Liquidation Toggle, the identity of, and compensation for, the Plan Administrator, (ii) in the case of the Reorganization Toggle (a) the identity of, and compensation for, the Liquidating Trustee, (b) the Liquidating Trust Agreement, and (c) transaction and/or corporate documents, if any, necessary to implement the reorganization, and (iii) in either case, any other schedules, lists, or documents that supplement or clarify aspects of this Plan and are identified as part of the Plan Supplement.

1.84    "Post-Effective Date Debtor" means, if the Liquidation Toggle is selected, the Debtor, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

1.85    "Priority Tax Claim" means any Claim of a Governmental Unit entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.86    "Pro Rata Share" means, with respect to any Distribution on account of an Allowed Claim, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

1.87    "Professional" or collectively "Professionals," means any professional Person or Entity employed in this chapter 11 case by Bankruptcy Court order pursuant to sections 327, 328, or 363 of the Bankruptcy Code.

1.88    "Purchaser" means JSX Holdings, LLC, as "Purchaser" under that certain Asset Purchase Agreement, dated November 7, 2022.

1.89    "Rejection Damages Bar Date" is defined in section 3.3(g).

1.90    "Related Persons" means collectively with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers,

directors, principals, employees, equity holders (regardless of whether such interests are held directly or indirectly), members, managers, managed accounts or funds, fund advisors, advisory or committee board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case acting in such capacity at any time during this chapter 11 case following the Petition Date.

1.91    "Released Party" means collectively, the Debtor and its Related Persons.

1.92    "Releasing Party" means collectively, (a) all Holders of Claims and Interests that are deemed to either accept or reject the Plan and who return a form affirmatively opting to grant the releases provided by section 11.9 of the Plan, (b) all Holders of Claims that vote to accept the Plan, (c) all Holders of Claims that abstain from voting on the Plan and who opt in to granting the releases provided by the Plan by checking the opt-in box on their respective Ballots, (d) all Holders of Claims that vote to reject the Plan and who opt in to granting the releases provided by the Plan by checking the opt-in box on their respective Ballots, and (e) any Related Persons for each of the foregoing to the extent that the Releasing Party described in clauses (a) through (d) has the capacity or authority under nonbankruptcy law to grant the release on behalf of such Related Persons.

1.93    "Reorganized Debtor" means, if the Reorganization Toggle is selected, on or after the Effective Date, the Debtor, as reorganized pursuant to and under the Plan, or any successor thereto.

1.94    "Reorganization Assets" means, collectively, the DOT Certificate, the FAA Certificate (to the maximum extent permitted by applicable law), the Manuals and Materials, and miscellaneous related assets (such miscellaneous related assets to be identified with more particularity in the Plan Supplement).

1.95    "Reorganization Toggle" means the Debtor's election to pursue the Plan as a plan of reorganization, with proceeds of the sale of the Debtor's assets, the Plan Sponsor Contribution, and all other assets (except the Reorganization Assets) vesting in the Liquidating Trust for the benefit of Holders of Allowed Claims, and the Reorganization Assets vesting in the Reorganized Debtor, as described more fully in the Introduction to this combined Disclosure Statement and Plan and Article X of the Plan.

1.96    "Reorganization Transaction" means the transaction to be consummated between the Debtor and the Plan Sponsor if the Reorganization Toggle is selected.

1.97    "Retained Assets" means all the Debtor's Cash and remaining Causes of Action existing immediately prior to the Effective Date.

1.98    "Sale" means the sale of the Debtor's assets to the Purchaser pursuant to the Sale Order.

1.99    "Sale Motion" means the *Debtor's Motion for Entry of Order (I) Authorizing and Approving (A) the Sale of Substantially All of the Debtor's Assets to Purchaser*

*Free and Clear of Liens, Claims and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* (D.I. 192).

1.100 "Sale Order" means the *Order (I) Authorizing and Approving the Sale of the Debtor's Inventory and Aircraft Parts to Purchaser Free and Clear of Liens, Claims and Encumbrances, and (II) Granting Related Relief* (D.I. 242), entered by the Bankruptcy Court on November 10, 2022.

1.101 "Schedules" mean the schedules of assets and liabilities and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

1.102 "Secured Claim" means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, Lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or nonbankruptcy law, in or upon any right, title or interest of the Debtor in and to property of the Estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of this Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

1.103 "Solicitation Materials" means all solicitation materials with respect to the Plan, including the Disclosure Statement and related ballots, which have been approved by the Bankruptcy Court pursuant to the Interim Approval and Procedures Order.

1.104 "Subordinated Claim" means any Claim subject to subordination, whether pursuant to a Final Order of the Bankruptcy Court under section 510 of the Bankruptcy Code or by written consent of the Holder of such Claim, whether such Final Order is entered or such consent is given prior to or following the Effective Date.

1.105 "Unclaimed Distributions" mean any Cash or other distributable property unclaimed on or after the Effective Date or the date on which an additional Distribution would have been made in respect of an Allowed Claim. Unclaimed Distributions shall include (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address, (b) funds for uncashed checks, (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, and (d) any Distribution deemed to be an Unclaimed Distribution pursuant to section 13.7 of this Plan.

1.106 "Unexpired Lease" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.107 "Union Contracts" means the Debtor's collective bargaining agreements with (i) the International Brotherhood of Teamsters, (ii) the International Association of Machinists and Aerospace Workers, (iii) Transport Workers Union of America, and (iv) the Air Line Pilots Association.

14

1.108    "Unimpaired" means, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.109    "U.S. Trustee Fees" mean fees payable pursuant to 28 U.S.C. § 1930, to the extent applicable to this chapter 11 case.

1.110    "Voting Class" means a Class whose members are entitled to vote on this Plan.

1.111    "Voting Deadline" means **December 12, 2022, at 4:00 p.m. (Prevailing Eastern Time)**, the date specified in the Disclosure Statement, the Ballots, the Interim Approval and Procedures Order or related Solicitation Materials approved by the Bankruptcy Court as the last date for Holders of Claims entitled to vote on this Plan to submit their ballots with respect to this Plan, as such date may be extended.

1.112    "Wind-Down Expenses" means the reasonable fees, costs and expenses of the Plan Administrator's or Liquidating Trustee's, as applicable, retained professionals, as determined in the reasonable discretion of the Plan Administrator or Liquidating Trustee, as applicable.

1.113    "Wind-Down Expense Reserve" means the reserve established pursuant to Article XIII of this Plan for payment of (i) the actual and projected costs and expenses of the Plan Administrator and (ii) actual and projected Wind-Down Expenses, other than funds in the other reserves set forth in Article XIII of this Plan.

**Rules of Interpretation**

1.114    Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein, unless the context requires otherwise. The words "include" and "including" shall mean "include, without limitation," or "including," as the case may be. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but used in the Bankruptcy Code or the Bankruptcy Rules, is used as defined in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.115    Any reference in this Plan to a contract, instrument, release, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, release, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

1.116    The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any reference to any entity as a holder of a Claim or Interest includes that entity's successors and assigns.

**Appendices and Plan Documents**

1.117    All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein.  The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Copies of the Plan Documents are available free of charge at https://dm.epiq11.com/case/eja.

ARTICLE II
**CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED RECOVERIES**

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.**

2.1    **General Rules of Classification**.  The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including the claims reconciliation process.  Actual recoveries may vary widely within these ranges, and without any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and the actual Distributions received by creditors.  The projected recoveries are based on information available to the Debtor as of the date hereof and reflect the Debtor's estimates as of the date hereof only.  In addition to the cautionary notes contained elsewhere in the combined Disclosure Statement and Plan, the Debtor emphasizes that it makes no representation as to the accuracy of these recovery estimates.  The Debtor expressly disclaims any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received or errors discovered).

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

All Claims and Interests, except Administrative Claims, Fee Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is set forth below in Article VI of the Plan.  The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class/<br>**Designation** | **Plan Treatment** | **Status** | **Projected<br>Recovery** | **Estimated<br>Amount** |
|---|---|---|---|---|
| **Class 1**: Secured Claims | Each Holder of a Secured Claim shall receive, at the option of the Debtor, as applicable: (i) Cash in an amount equal to the Allowed amount of such Claim; (ii) reinstatement of such Holder's Allowed Secured Claim; (iii) such other treatment sufficient to render such Holder's Allowed Secured Claim Unimpaired; or (iv) return of the applicable collateral in satisfaction of the Allowed amount of such Secured Claim. | Unimpaired<br><br>Not entitled to vote<br><br>Deemed to accept Plan | 100% | $945,000 |
| **Class 2**: Other Priority Claim | Each Holder of an Other Priority Claim shall receive Cash equal to the amount of such Allowed Other Priority Claim. | Unimpaired<br><br>Not entitled to vote<br><br>Deemed to accept Plan | 100% | $943,000 |
| **Class 3**: Convenience Claims | Each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for its Allowed Class 3 Claim, payment in Cash equal to 50% of such Allowed Convenience Claim on the Effective Date or as soon thereafter as reasonably practicable. Class 3 initially shall consist of all General Unsecured Claims that total $5,000 or less. | Impaired<br><br>Entitled to vote | 50% | $146,000 |

| Class/ Designation | Plan Treatment | Status | Projected Recovery | Estimated Amount |
|---|---|---|---|---|
| | Payment to Class 3 is in lieu of any treatment as a Holder of a Class 4 Claim.  Any unsecured creditor with a General Unsecured Claim that is above $5,000 electing treatment as a Convenience Claim must affirmatively do so on its Class 4 Ballot. | | | |
| **Class 4:** General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for its Allowed Class 4 Claim, its Pro Rata share of the General Unsecured Claim Distribution Fund. | Impaired Entitled to vote | 9.5% – 10.7% | $30.5 million |
| **Class 5:** Subordinated Claims | Each Holder of an Allowed Class 5 Claim shall receive no Distribution on account of its Subordinated Claims. | Impaired Not entitled to vote Deemed to reject Plan | 0% | $0 |
| **Class 6:** Equity Interests | If the Liquidation Toggle is selected, then, on the Effective Date, all Existing Equity Interests shall be deemed canceled, extinguished and discharged and of no further force or effect, and the Holders of Existing Equity Interests shall not be entitled to receive or retain any | Impaired Not entitled to vote Deemed to reject Plan | 0% | N/A |

| Class/ Designation | Plan Treatment | Status | Projected Recovery | Estimated Amount |
|---|---|---|---|---|
| | property on account of such Interests.

If the Reorganization Toggle is selected, then, on the Effective Date, all Existing Equity Interests shall be deemed canceled, extinguished and discharged and of no further force or effect, and the Holders of Existing Equity Interests shall not be entitled to receive or retain any property on account of such Interests, and 100% of the New Equity Interests will be issued to the Plan Sponsor in exchange for the Plan Sponsor Contribution. | | | |

2.2     **Unimpaired Classes of Claims**.

**Class 1: Secured Claims.**  Class 1 shall consist of Secured Claims against the Debtor.  Class 1 Claims are Unimpaired by the Plan and the Holders of Allowed Class 1 Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

**Class 2: Other Priority Claims.**  Class 2 shall consist of Other Priority Claims against the Debtor.  Class 2 Claims are Unimpaired by the Plan and the Holders of Allowed Class 2 Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

2.3     **Impaired Classes of Claims**.

**Class 3: Convenience Claims.** Class 3 shall consist of Allowed Convenience Claims.  Class 3 Claims are Impaired by the Plan and entitled to vote to accept or reject the Plan.

**Class 4: General Unsecured Claims.**  Class 4 shall consist of Allowed General Unsecured Claims against the Debtor.  Class 4 Claims are Impaired by the Plan and entitled to vote to accept or reject the Plan.

**Class 5: Subordinated Claims.**  Class 5 shall consist of all Subordinated Claims. Because Holders of Class 5 Subordinated Claims will receive no Distribution under the Plan,

Holders of Class 5 Subordinated Claims are deemed to reject the Plan and, therefore, not entitled to vote on the Plan.

2.4     **Impaired Class of Equity Interests**.

**Class 6: Equity Interests.**  Class 6 shall consist of all Existing Equity Interests. Because Holders of Class 6 Equity Interests will receive no Distribution under the Plan, Holders of Class 6 Equity Interests are deemed to reject the Plan and, therefore, not entitled to vote on the Plan.

ARTICLE III
**BACKGROUND AND DISCLOSURES**

3.1     **General Background.**[3]

(a)     *The Debtor's Business.*

ExpressJet is a Delaware limited liability company.  Historically, the Debtor operated as a regional airline carrier, providing flight services on behalf of other airlines under private label capacity purchase agreements using aircraft subleased from United Airlines, Inc. ("United").  United and ExpressJet were parties to the Amended and Restated Capacity Purchase Agreement dated January 22, 2019 (the "CPA"), which set forth terms and conditions related to ExpressJet's exclusive provision of regional flight services to United.  In summer of 2020, United withdrew all aircraft from the CPA, eliminating ExpressJet's sole source of revenue.  ExpressJet returned all aircraft and related parts to United or United's aircraft lessors and ceased revenue flight operations.  As a result, ExpressJet's certified authority to fly, granted by DOT, became dormant.

In spring of 2021, ExpressJet reapplied to DOT for certified authority to fly and regained such authority in late summer that same year.  ExpressJet then resumed commercial operations, as both an *ad hoc* air charter provider and scheduled commercial airline under its own leisure brand aha! (short for "air ● hotel ● adventure"), which provided travelers in smaller communities with convenient, short, nonstop flights to and from the Reno-Tahoe International Airport.  As of the Petition Date, the Debtor has ceased operating, canceled its scheduled and charter flights, terminated a substantial number of employees, promptly returned its leased aircraft and intends to liquidate its remaining assets.

---

[3]     Further information regarding the Debtor's business, assets, and the circumstances leading to the filing of the chapter 11 case is set forth in detail in the *Declaration of John Greenlee in Support of Chapter 11 Petition and First Day Relief* (D.I. 2), which is incorporated by reference herein.

(b)     *The Debtor's Outstanding Debt.*

The Debtor does not have any funded prepetition secured debt. The Debtor estimates that unsecured claims against its Estate may total up to approximately $30.5 million.[4]

### 3.2    Events Leading to Chapter 11.

When ExpressJet resumed commercial operations in October 2021, its business plan was predicated on, among other parameters, being able to: (1) grow sufficiently to spread overhead costs across a growing fleet and achieve competitive unit costs, (2) generate sufficient revenues, and (3) maintain costs at business-plan levels. Due to several outside factors, ExpressJet was unable to achieve these three objectives. As a result, ExpressJet's operating expenses increased precipitously and became an unacceptable drain on the company's assets, thereby leading to this chapter 11 case.

In particular, the market for the specific aircraft ExpressJet operated tightened significantly. ExpressJet's business plan called for growth of approximately one aircraft per month and approximately eight aircraft by mid-2022. ExpressJet targeted this size fleet and the associated revenue to spread overhead expenses sufficiently across the company's revenue base. The market changes precluded ExpressJet from procuring aircraft and expanding its fleet at a manageable cost.

At the same time, ExpressJet experienced a revenue shortfall due to the resurgence of COVID-19 variants in early 2022. As COVID-19 variants spread, demand for commercial flights significantly dropped, resulting in less revenue than ExpressJet anticipated in its business plan.

Finally, fuel costs and other inflationary pressures led to substantially higher costs than expected. Fuel costs alone increased by 50–100% in early 2022. As a startup airline, with low brand acceptance and customer loyalty, ExpressJet was unable to pass along the cost increases to passengers in the form of higher fares. As a result of these factors, ExpressJet was forced to shut down its operations, lay off a significant portion of its workforce, and seek relief under chapter 11 of the Bankruptcy Code.

### 3.3    The Chapter 11 Case.

(a)     *Generally.*

As set forth above, on the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The commencement of a chapter 11 case creates an estate that is composed of the legal and equitable interests of the debtor as of that date. The Bankruptcy Code provides that the debtor may continue to remain in

---

[4]     This estimate does not reflect the total Allowed claims against the Estate. The Debtor has not completed its claims reconciliation process. Therefore, the actual amount of Allowed claims may vary materially from this estimate.

possession of its property and manage its assets as a "debtor in possession."  Since the Petition Date, the Debtor has maintained its assets to preserve value for its unsecured creditors.

The filing of the Debtor's bankruptcy petition on the Petition Date triggered the immediate imposition of the automatic stay under section 362 of the Bankruptcy Code, which, with limited exceptions, enjoins all collection efforts and actions by creditors, the enforcement of Liens against property of the Debtor and both the commencement and the continuation of prepetition litigation against the Debtor.  With certain limited exceptions and/or modifications as permitted by order of the Bankruptcy Court, the automatic stay will remain in effect from the Petition Date until the Effective Date of the Plan.

(b)    *"First Day" Motions*.

On the Petition Date, the Debtor filed a number of "first-day" motions designed to ease the Debtor's transition into chapter 11, maximize the value of the Debtor's assets and minimize the effects of the commencement of the chapter 11 case. On August 24, 2022, the Bankruptcy Court entered orders providing various first-day relief, including interim or final orders approving:

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Certain Prepetition Taxes and Fees, (II) Authorizing Banks and Financial Institutions to Honor and Process Checks and Transfers Related Thereto, and (III) Granting Related Relief*;

- *Debtor's Motion for Interim and Final Orders (I) Authorizing Payment of Prepetition Claims of Certain Critical Vendors and (II) Granting Related Relief*;

- *Debtor's Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Utility Services, (II) Approving Proposed Adequate Assurance of Payment to Utility Providers and Authorizing Debtor to Provide Additional Assurances, (III) Establishing Procedures to Resolve Requests for Additional Assurance; and (IV) Granting Related Relief*;

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Continue Its Existing Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Its Bank Accounts and Existing Business Forms, (D) Implement Changes to the Existing Cash Management System as Necessary, and (E) Continue Ordinary Course Intercompany Transactions, (II) Waiving the Requirements of 11 U.S.C. § 345(b) and the U.S. Trustee's Operating Guidelines, and (III) Granting Related Relief*; and

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Maintain Employee Compensation Practices and Benefits Programs and (B) Redact Certain Personally Identifiable Information of*

*Debtor's Current and Former Employees, and (II) Granting Related Relief.*

(c)     *Retention of Professional Advisors.*

Pursuant to orders entered in late September and October, the Bankruptcy Court authorized the Debtor to retain and employ (a) Morris, Nichols, Arsht & Tunnell LLP, as its bankruptcy counsel (D.I. 166), (b) Moore, Colson & Company, P.C., as its financial advisor and accountant (D.I. 156), (c) Epiq Corporate Restructuring, LLC, as the claims and noticing agent (D.I. 114) and administrative advisor (D.I. 179), and (d) Eversheds Sutherland (US) LLP, as its special counsel (D.I. 214).

(d)     *The Sale of Substantially All the Debtor's Physical Assets*

The Debtor filed the chapter 11 case to sell its remaining assets with the goal of maximizing the recovery for its Estate and creditors. The remaining assets primarily comprise aircraft parts and tooling and ground support equipment. On September 15, 2022, the Bankruptcy Court held a status conference on the Debtor's proposed sale process for its remaining physical assets. As explained at the status conference, the Debtor decided to publicly market its remaining physical assets through a Request for Proposal ("RFP") process. The Debtor proposed it would select finalists after a set deadline for interested parties to submit an RFP and then negotiate revisions to the submitted proposals as necessary before the Debtor selected the winning proposal. The Bankruptcy Court approved the Debtor's proposed sale process.

Pursuant to the sale process, JSX Holdings, LLC, submitted a proposal for substantially all the Debtor's assets by the proposal deadline of September 30, 2022, for a purchase price of $9,000,000. The Debtor, in a sound exercise of its business judgment, determined that the Purchaser's proposal, as subsequently improved, was the highest and best bid for the assets and therefore the winning proposal.

On October 20, 2022, the Debtor filed the Sale Motion seeking, among other things, approval of the sale to the Purchaser free and clear of all Liens, claims, encumbrances and other interests. On November 10, 2022, the Bankruptcy Court entered the Sale Order.

The Debtor anticipates the sale approved by the Sale Order will close on or before November 18, 2022. The Debtor expects the sale of the remaining physical assets to yield approximately $9,000,000 in net proceeds for the benefit of the Debtor's Estate and its creditors.

(e)     *De Minimis Asset Sales*

On August 27, 2022, the Debtor filed a motion for Bankruptcy Court approval of procedures to sell, free and clear of all Liens, claims, interests and encumbrances, certain *de minimis* or otherwise expendable assets having a purchase price of $500,000 or less (D.I. 55). On September 16, 2022, the Bankruptcy Court entered the De Minimis Asset Sale Procedures Order. Pursuant to the De Minimis Asset Sale Procedures Order, the Debtor has filed several notices of *de minimis* asset sales, indicating, among other things, the assets sold and the purchase price (D.I. 128, 142, 146, 164, 165 & 207). To date, the *de minimis* asset sales have yielded over $580,000 in net proceeds for the Debtor's Estate.

(f)     *The Reorganization Assets and Reorganization Toggle*

The Debtor has also decided to publicly market the Reorganization Assets through a separate RFP process. The RFP is for a Plan Sponsor who will contribute Cash or other consideration in exchange for the New Equity Interests of the Reorganized Debtor. Under this RFP process, binding letters of intent were due on or before November 4, 2022. Parties who submitted binding letters of intent then have an opportunity to review the Manual and Materials as well as the Union Contracts before the deadline to submit final bids on November 18, 2022.

After the deadline for final bids, the Debtor will determine whether the net proceeds from any proposed transaction with respect to the Reorganization Assets will materially outweigh the costs associated with pursuing, documenting and closing such transaction, including any costs regarding obtaining regulatory approval (i) to transfer or resume operations under the DOT Certificate and (ii) for the re-issuance of the FAA Certificate. Notwithstanding anything in this Plan to the contrary, the FAA Certificate is not transferable. The FAA may issue a new operating certificate only after the FAA has evaluated the Plan Sponsor and determined that it is properly and adequately equipped and able to conduct safe operations in accordance with applicable federal law. The DOT Certificate cannot be transferred without the prior approval of the DOT. If the Debtor determines the net proceeds materially outweigh the costs, the Debtor will pursue the Reorganization Toggle outlined in this Plan. Under this scenario, the Debtor intends to select a Plan Sponsor no later than November 22, 2022, and will File a notice with the Bankruptcy Court identifying the Plan Sponsor and the proposed Plan Sponsor Contribution.

(g)     *Bar Dates Pursuant to the Bar Date Order*

On September 22, 2022, the Debtor filed the Bar Date Motion and on September 29, 2022, the Bankruptcy Court entered the Bar Date Order. Pursuant to the Bar Date Order, the Bankruptcy Court established the following Bar Dates:

(1)     General Bar Date: **October 31, 2022, at 5:00 p.m. (prevailing Eastern Time)** as the deadline for each person or entity, including individuals, partnerships, corporations, joint ventures, trusts, but not including Governmental Units, to file a Proof of Claim in respect of a prepetition Claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor, including, for the avoidance of doubt, secured claims, claims asserted under section 503(b)(9) of the Bankruptcy Code, unsecured priority claims, and unsecured non-priority claims;

(2)     Government Bar Date: **February 21, 2023**, is the statutory deadline for Governmental Units to file a Proof of Claim in respect of a prepetition claim against the Debtor;

(3)     First Administrative Claims Bar Date: **October 31, 2022, at 5:00 p.m. (prevailing Eastern Time)** is the deadline for each person or entity that asserts a request for payment of Administrative Claims arising between the Petition Date and September 30, 2022, excluding (i) claims for professional fees and expenses in this case, and (ii) claims asserting administrative priority and arising in

the ordinary course of business after the Petition Date, to file a request for payment of such Administrative Claims.

(4)      Amended Schedules Bar Date: the later of (i) the General Bar Date or the Government Bar Date, as applicable, or (ii) **5:00 p.m. (prevailing Eastern Time)** on the date that is 30 days from the date on which the Debtor provides notice of a previously unfiled Schedule or an amendment or supplement to the Schedules as the deadline by which claimants holding claims affected by such filing, amendment or supplement must file Proofs of Claim with respect to such claim; and

(5)      Rejection Damages Bar Date: the later of (i) the General Bar Date or the Government Bar Date, as applicable, or (ii) **5:00 p.m. (prevailing Eastern Time)** on the date that is 30 days following service of an order approving rejection of any executory contract or unexpired lease of the Debtor as the deadline by which claimants asserting claims resulting from the Debtor's rejection of an executory contract or unexpired lease must file Proofs of Claim for damages arising from such rejection.

(h)    *The Wind-Down of the Estate*

Following the sale of substantially all the Debtor's physical assets to the Purchaser, the Debtor is focused principally on winding down its business and preserving Cash held in the Estate. The Debtor's Retained Assets currently consist of proceeds of the sale to the Purchaser and certain Causes of Action. The Debtor also has the Reorganization Assets. Under the Liquidation Toggle, this Plan provides for the Debtor's Retained Assets to be distributed to Holders of Allowed Claims in accordance with the terms of the Plan.

Under the Reorganization Toggle, this Plan provides for the Reorganization Assets to vest in the Reorganized Debtor free and clear of all Liens, claims, and encumbrances. The Plan Sponsor will make the Plan Sponsor Contribution in exchange for the New Equity Interests of the Reorganized Debtor. The Debtor's Retained Assets and the Plan Sponsor Contribution will then be distributed to Holders of Allowed Claims in accordance with the terms of the Plan.

ARTICLE IV
**CONFIRMATION AND VOTING PROCEDURES**

4.1    **Confirmation Procedure.** On November 10, 2022, the Bankruptcy Court entered the Interim Approval and Procedures Order conditionally approving the combined Disclosure Statement and Plan for solicitation purposes only and authorizing the Debtor to solicit votes to accept or reject the Plan. The Confirmation Hearing has been scheduled for **December 20, 2022 at 2:00 p.m. (prevailing Eastern Time)** to consider (a) final approval of the combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

4.2     **Procedure for Objections.** Any objection to final approval of the combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Plan must be made in writing and Filed with the Bankruptcy Court and served on (a) counsel for the Debtor, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn: Eric D. Schwartz, eschwartz@morrisnichols.com, Matthew B. Harvey, mharvey@morrisnichols.com, and Paige N. Topper, ptopper@morrisnichols.com; and (b) the U.S. Trustee for the District of Delaware, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Jr., timothy.fox@usdoj.gov in each case, by no later than **December 12, 2022 at 4:00 p.m. (prevailing Eastern Time)**.    Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

4.3     **Requirements for Confirmation.** The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among other requirements, the Plan (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (b) must be feasible.  The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

4.4     **Classification of Claims and Interests**.

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be and have not been classified).  The Debtor also is required, under section 1122 of the Bankruptcy Code, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest.  The Debtor believes that the Plan complies with such standard.  If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the Holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

The Debtor believes that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law.

It is possible that a Holder of a Claim or Interest may challenge the Debtor's classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed.  If this occurs, the Debtor intends, in accordance with the terms of the Plan, to make such modifications to the Plan as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RESOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED A MEMBER.

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class.  Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class.  Additionally, any changes to the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual distribution received by creditors.  The projected recoveries are based on information available to the Debtor as of the date hereof and reflect the Debtor's views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein.  The Debtor believes that the consideration, if any, provided under the Plan to holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including contractual subordination, if any) of such Claims and Interests.  The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan.  Many of these tests are designed to protect the interests of Holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

4.5     **Impaired Claims or Interests**.

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are Impaired under a plan may vote to accept or reject such plan.  Generally, a claim or interest is Impaired under a plan if the holder's legal, equitable or contractual rights are changed under such plan.  In addition, if the holders of claims or interests in an Impaired Class do not receive or retain any property under a plan on account of such claims or interests, such Impaired Class is deemed to have rejected such plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, only Holders of Claims in Classes 3 and 4 are Impaired and are entitled to vote on the Plan.  Under the Plan, Holders of Claims or Interests in Classes 5 and 6 are Impaired and will not receive or retain any property under the Plan on account of such Claims or Interests and, therefore, are not entitled to vote on the Plan and deemed to reject the Plan.  Under the Plan, Holders of Claims in Classes 1 and 2 are Unimpaired and, therefore, not entitled to vote on the Plan and are deemed to accept the Plan.

### 4.6     Confirmation Without Necessary Acceptances; Cramdown

In the event that any Impaired Class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all Impaired Classes, if the plan has been accepted by at least one Impaired Class of claims, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting Impaired Class of claims or interests.  Here, because holders of Claims and Interests in Classes 5 and 6 are deemed to reject the Plan, the Debtor will seek confirmation of the Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  The Debtor believes that such requirements are satisfied, in part, as no Holder of a Claim or Interest junior to those in Classes 5 and 6 will receive any property under the Plan.

A plan does not "discriminate unfairly" if (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the nonaccepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests, provided that a debtor may be afforded wide latitude for separately classifying and treating claims of the same priority based on, among other factors, the differing factual or legal nature or attributes of the claims or their holders. The Debtor believes that, under the Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, when taking into account the nature and attribute of such Claims and Interests and their Holders, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class. Accordingly, the Debtor believes that the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable."  In order to determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

(a)     Secured Creditors. Either (i) each Impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each Impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and

clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

(b)    Unsecured Creditors. Either (i) each Impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

(c)    Equity Interests. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

The Debtor believes that the distributions provided under the Plan satisfy the absolute priority rule, where required.  In the event of the Reorganization Toggle, the Existing Equity Interests will be canceled and reissued, to a third party in exchange for new value, and therefore the absolute priority rule is not implicated because Holders of Existing Equity Interests are not receiving or retaining any value under the Plan on account of such Existing Equity Interests.  The Debtor will be prepared to meet its burden to establish that the Plan can be confirmed pursuant to section 1129(b) of the Bankruptcy Code as part of confirmation of the Plan.

4.7    **Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan).  Inasmuch as the Debtor's principal assets have been liquidated and the Plan provides for the distribution of all the Cash proceeds of the Debtor's assets to Holders of Claims that are Allowed as of the Effective Date in accordance with the Plan, for purposes of this test, the Debtor has analyzed the ability of the Plan Administrator or Liquidating Trustee, as the case may be, to meet its discrete obligations under the Plan.  Under the Liquidation Toggle or Reorganization Toggle, based on the Debtor's analysis, the Plan Administrator or Liquidating Trustee, respectively, will have sufficient assets to accomplish its tasks under the Plan.  In addition, under the Reorganization Toggle, the sources of the Distributions to Holders of Allowed Claims are independent of the success of the Reorganized Debtor.  Therefore, the Debtor believes that the liquidation or reorganization, as applicable, pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.  As necessary, the Debtor will be prepared to demonstrate that the Plan satisfies section 1129(a)(11) as part of confirmation of the Plan.

### 4.8    Best Interests Test and Liquidation Analysis

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are Impaired by that plan and that have not accepted the plan.  The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an Impaired Class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each Impaired Class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its chapter 11 case were converted to a chapter 7 case under the Bankruptcy Code.  To determine if a plan is in the best interests of each Impaired Class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such Impaired Classes under the plan.  If the hypothetical liquidation distribution to holders of claims or interests in any Impaired Class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such Impaired Class.

Under the Liquidation Toggle, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan.  However, the Debtor believes that in a chapter 7 liquidation, there would be additional costs and expenses that the Estate would incur as a result of liquidating the Estate in a chapter 7 case, as set forth below in this section.

Under the Reorganization Toggle, the Debtor believes that the Plan provides the same or a greater recovery for Holders of Allowed Claims for the reasons listed below.  In addition, the Reorganization Toggle allows for the monetization of the Reorganization Assets that will result in a further benefit to the Estate and the Debtor's creditors.

The costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee.  The Debtor believes such amount would exceed the amount of expenses that would be incurred in implementing the Plan under either the Liquidation Toggle or Reorganization Toggle.  Conversion also would likely delay the liquidation process and ultimate distribution of the Retained Assets.  The Estate would also be obligated to pay all unpaid expenses incurred by the Debtor during the chapter 11 case (such as compensation for professionals) that are allowed in the chapter 7 case. Accordingly, the Debtor believes that holders of Allowed Claims would receive less than anticipated under the Plan if the chapter 11 case were converted to a chapter 7 case, and therefore, the classification and treatment of Claims and Interests in the Plan complies with section 1129(a)(7) of the Bankruptcy Code.  Attached hereto as **Exhibit A** is a hypothetical chapter 7 liquidation analysis compared against the Liquidation Toggle.  If the Reorganization Toggle is

selected, then the Debtor will prepare and file a hypothetical chapter 7 liquidation analysis compared against the Reorganization Toggle.

      4.9      **Acceptance of the Plan**

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of ballots are set forth in the Interim Approval and Procedures Order.

For the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one Voting Class, excluding the votes of Insiders, must vote to accept the Plan.

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL THE BALLOT YOU RECEIVE.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY AND TO IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE HOLDER.  IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT OR YOU LOST YOUR BALLOT OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE CLAIMS AGENT VIA EMAIL AT EXPRESSJETINFO@EPIQGLOBAL.COM.

IF YOU ARE ENTITLED TO VOTE AND YOU VOTE TO ACCEPT THE PLAN, YOU SHALL BE DEEMED TO HAVE CONSENTED TO THE THIRD PARTY RELEASES DESCRIBED IN SECTION 11.9 OF THIS PLAN.  IF (I) YOU DO NOT VOTE EITHER TO ACCEPT OR REJECT THE PLAN OR (II) IF YOU VOTE TO REJECT THE PLAN, AND YOU CHECK THE BOX TO OPT IN TO GRANTING THE RELEASES ON THE APPLICABLE BALLOT, YOU HAVE CONSENTED TO THE THIRD PARTY RELEASES DESCRIBED IN SECTION 11.9 OF THIS PLAN.

ARTICLE V
**<u>CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING</u>**

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

      5.1      **The Plan May Not Be Accepted**.

The Debtor can make no assurances that the requisite acceptances to the Plan will be received, and the Debtor may need to obtain acceptances to an alternative plan of reorganization

or liquidation for the Debtor, or otherwise, that may not have the support of the creditors and/or may be required to liquidate the Estate under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to creditors as those proposed in the Plan.

5.2     **The Plan May Not Be Confirmed**.

Even if the Debtor receives the requisite acceptances, there is no assurance that the Bankruptcy Court will confirm the Plan. Even if the Bankruptcy Court determined that the combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met. Moreover, there can be no assurance that modifications to the combined Disclosure Statement and Plan will not be required for Confirmation or that such modifications would not necessitate the resolicitation of votes. If the Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of reorganization or liquidation.

5.3     **Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections**.

Projected distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors, including the amount and value of assets available for Distribution and the number and value of Claims ultimately Allowed in this case. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtor's estimates. If the total amount of Allowed Claims in a Class is higher than the Debtor's estimates, or the funds available for distribution to such Class are lower than the Debtor's estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

5.4     **Objections to Classification of Claims**.

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Debtor believes that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtor would seek to (i) modify the Plan to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that

a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires resolicitation, the Debtor will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Debtor believes that it would be required to resolicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtor believes that the Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Plan and could increase the risk that the Plan will not be consummated.

### 5.5     **Failure to Consummate the Plan**.

The Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will be consummated.

### 5.6     **Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan**.

There can be no assurance that the estimated Claim amounts set forth in the Plan are correct, and the actual Allowed amounts of Claims may differ from the estimates. The estimated amounts are based on certain assumptions with respect to a variety of factors. Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein, thereby materially reducing the recovery to the Holders of Class 4 General Unsecured Claims under the Plan.

### 5.7     **Plan Releases May Not Be Approved**.

There can be no assurance that the releases, as provided in Article XI of the Plan, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan of reorganization or liquidation that differs from the Plan or the Plan not being confirmed.

### 5.8     **The Reorganization Toggle May Not be Achieved**.

The Plan provides for the Reorganization Toggle in the event that pursuit of a transaction for the Reorganization Assets materially outweighs the costs of consummating such a transaction. There can be no assurance that the RFP process for the Reorganization Assets will

result in an achievable and cost-effective transaction for the Reorganization Assets. If the Reorganization Toggle is not achieved, the value, if any, of the Reorganization Assets may not be realized.

### 5.9    **The Reorganization Transaction May Fail to Close**.

Even if the Debtor elects to pursue the Reorganization Toggle, the Debtor can make no assurances that the Reorganization Transaction will close. The Plan Sponsor's delay in or failure to consummate the proposed transaction may delay consummation of the Plan, or may result in a plan of reorganization or liquidation that differs materially from the Plan and/or the loss of value of the Reorganization Assets. Additionally, to the extent that regulatory or governmental approvals are required, the Debtor makes no assurances that such approvals will be obtained. Failing to obtain required approvals may delay consummation of the Plan, or may result in a plan of reorganization or liquidation that differs materially from the Plan and/or the loss of value of the Reorganization Assets.

### 5.10    **Certain Tax Considerations**.

There are a number of material income tax considerations, risks and uncertainties associated with the plan of reorganization or liquidation of the Debtor described in this combined Disclosure Statement and Plan.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

### ARTICLE VI
### <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

Pursuant to section 1126(f) of the Bankruptcy Code, Holders of Unimpaired Claims are conclusively presumed to have accepted this Plan. The Holders of Administrative Claims, Fee Claims, Priority Tax Claims, Secured Claims, and Other Priority Claims are not Impaired under this Plan.

### 6.1    **Administrative Claims.** Unless otherwise agreed to by the Holder of an

Allowed Administrative Claim, each Holder of an Allowed Administrative Claim (other than Holders of Fee Claims and Claims for U.S. Trustee Fees) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the Allowed amount of such Administrative Claim either: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the

ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim; (d) at such time as may be agreed upon by (i) if before the Effective Date, such Holder and the Debtor or (ii) if after the Effective Date, such Holder and the Plan Administrator or Liquidating Trustee, as the case may be; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Holders of Administrative Claims accruing from October 1, 2022, through the Effective Date, other than Holders of Fee Claims and Claims for U.S. Trustee Fees, must File with the Claims Agent and serve on the Plan Administrator under the Liquidation Toggle or the Liquidating Trustee under the Reorganization Toggle requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to be actually received on or before the Final Administrative Claim Bar Date. Any Person or Entity required to timely File such Claim but fails to do so shall not be treated as a creditor with respect to such Claim for the purpose of voting and distribution in this chapter 11 case on account of such Claim. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Final Administrative Claim Bar Date and shall constitute notice of such Bar Date.

For the avoidance of doubt, (i) the deadline for Filing requests for payment of 503(b)(9) Claims is the General Bar Date and (ii) the deadline for Filing requests for payment of Administrative Claims that arose between the Petition Date through and including September 30, 2022, is the First Administrative Claim Bar Date, and neither deadline is extended by this Combined Disclosure Statement and Plan nor the Confirmation Order.

With respect to U.S. Trustee Fees, all fees due and payable to the U.S. Trustee pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code, to the extent applicable ("Quarterly Fees") before the Effective Date shall be paid by the Debtor on the Effective Date. After the Effective Date, the Liquidating Trust under the Reorganization Toggle option or the Post-Effective Date Debtor or Plan Administrator (on behalf of the Post-Effective Date Debtor) under the Liquidation Toggle option, as the case may be, shall be liable and shall pay all Quarterly Fees accruing from and after the Effective Date when due and payable until the earliest to occur of the Debtor's case being converted to a case under chapter 7 of the Bankruptcy Code, dismissed, or closed. The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, Liquidating Trustee under the Reorganization Toggle option or the Post-Effective Date Debtor or Plan Administrator (on behalf of the Post-Effective Date Debtor) under the Liquidation Toggle option, as the case may be, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. The U.S. Trustee shall not be required to file a request for payment of its Quarterly Fees, which shall be deemed an Administrative Claim against the Debtor and its Estate. The U.S. Trustee shall not be treated as providing any release under the Plan.

6.2    **Fee Claims**. All requests for payment of Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed and served in accordance with the Interim Compensation Procedures Order by the date that is 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy

Code. If an application for a Fee Claim is not Filed within 45 days after the Effective Date, such Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the deadline to File requests for payment of Fee Claims.

6.3 **Priority Tax Claims**. Unless otherwise agreed to by the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction of such Allowed Priority Tax Claim Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim either: (a) if a Priority Tax Claim is Allowed on or prior to the Effective Date, on the Effective Date by the Debtor; (b) if such Priority Tax Claim is not Allowed as of the Effective Date, no later than 45 days after the date on which an order Allowing such Tax Claim becomes a Final Order; (c) at such time as may be agreed upon by (i) if prior to the Effective Date, such Holder and the Debtor or (ii) if after the Effective Date, such Holder and the Plan Administrator or Liquidating Trustee, as the case may be; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided*, *however*, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid by the Post-Effective Date Debtor or the Liquidating Trust, as applicable, in the ordinary course as they become due. Any Claim or demand for any penalty (a) will be subject to treatment as a General Unsecured Claim, if and to the extent it is an Allowed Claim, and (b) the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such amounts from the Debtor, the Estate, the Post-Effective Date Debtor, the Plan Administrator, the Liquidating Trust, or the Liquidating Trustee, as applicable, except as a General Unsecured Claim, if and to the extent it is an Allowed Claim.

ARTICLE VII
**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

The Claims in Classes 1 and 2 are Unimpaired, conclusively deemed to accept the Plan and are not entitled to vote on the Plan. The Claims in Classes 3 and 4 are Impaired and entitled to vote to accept or reject this Plan. Holders of Claims in Class 5 and Interests in Class 6 are conclusively deemed to reject the Plan and, therefore, are not entitled to vote on the Plan.

7.1 **Class 1: Secured Claims.** Except to the extent that a Holder of an Allowed Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each Holder of an Allowed Secured Claim will receive, on account of such Allowed Claim, (a) Cash in an amount equal to the Allowed amount of such Claim; (b) reinstatement of such Holder's Allowed Secured Claim; (c) such other treatment sufficient to render such Holder's Allowed Secured Claim Unimpaired; or (d) return of the applicable collateral in satisfaction of the Allowed amount of such Secured Claim.

7.2 **Class 2: Other Priority Claims**. Unless otherwise agreed to by the Holder of an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim will receive in full and final satisfaction of such Allowed Other Priority Claim an amount of Cash equal to the unpaid portion of such Allowed Other Priority Claim either: (a) if an Other Priority Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably

practicable thereafter; (b) if such Other Priority Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Other Priority Claim becomes a Final Order; (c) at such time as may be agreed upon by (i) if prior to the Effective Date, such Holder and the Debtor or (ii) if after the Effective Date, such Holder and the Plan Administrator or Liquidating Trustee, as applicable; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

7.3 **Class 3: Convenience Claims.** Except to the extent that the Holder of an Allowed Convenience Claim agrees to less favorable treatment, each Holder of an Allowed Convenience Claim will receive, on the Effective Date or within thirty (30) days thereof, in full and final satisfaction, and release of and in exchange for its Allowed Convenience Claim an amount of Cash equal to 50% of such Allowed Convenience Claim. Class 3 initially shall consist of all General Unsecured Claims that total $5,000 or less. Payment to a Holder of an Allowed Convenience Claim is in lieu of any treatment as a Holder of a General Unsecured Claim in Class 4. Any unsecured creditor with a General Unsecured Claim that is above $5,000 electing treatment as a Convenience Claim must affirmatively do so on its Class 4 Ballot.

7.4 **Class 4: General Unsecured Claims.** Except to the extent that the Holder of an Allowed Claim in Class 4 agrees to less favorable treatment, each Holder of an Allowed Claim in Class 4 shall receive, on the Effective Date, in full and final satisfaction, settlement, and release of and in exchange for its Allowed Class 4 Claim its Pro Rata Share of the General Unsecured Claim Distribution Fund.

7.5 **Class 5: Subordinated Claims.** Holders of Subordinated Claims shall receive no Distribution on account of their Subordinated Claims pursuant to the Plan.

7.6 **Class 6: Equity Interests**. If the Liquidation Toggle is selected, then, on the Effective Date, all Existing Equity Interests shall be canceled and each Holder of an Existing Equity Interest in the Debtor shall receive no Distribution pursuant to the Plan. If the Reorganization Toggle is selected, then, on the Effective Date, all Existing Equity Interests shall be deemed canceled, extinguished and discharged and of no further force or effect, and each Holder of an Existing Equity Interest in the Debtor shall receive no Distribution pursuant to the Plan.

7.7 **Reservation of Rights Regarding Claims and Interests**. Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtor's rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## ARTICLE VIII
## ACCEPTANCE OR REJECTION OF THE PLAN

8.1 **Classes Entitled to Vote**. Because Claims in Classes 3 and 4 are Impaired and Holders thereof will receive or retain property or an interest in property under the Plan, only the Holders of Class 3 and 4 Claims shall be entitled to vote to accept or reject the Plan.

8.2 **Acceptance by Impaired Classes of Claims or Interests**. In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted

by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan. In accordance with section 1126(d) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Interests shall have accepted the Plan if such Plan is accepted by Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have timely and properly voted to accept or reject the Plan.

8.3    **Presumed Acceptance by Unimpaired Classes**. Because Claims in Classes 1 and 2 are Unimpaired, pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1 and 2 are deemed to have accepted the Plan and, therefore, Holders of such Claims are not entitled to vote to accept or reject the Plan.

8.4    **Presumed Rejections by Impaired Classes**. Because Holders of Subordinated Claims in Class 5 and Holders of Interests in Class 6 are not entitled to receive or retain any property under the Plan, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Subordinated Claims in Class 5 and Holders of Interests in Class 6 are presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

8.5    **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**. To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtor reserves the right to request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan, the documents submitted in support thereof or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

8.6    **Controversy Concerning Impairment**. If a controversy arises as to whether any Claim or Interest is Impaired under the Plan, the Bankruptcy Court shall determine such controversy on or before the Confirmation Date.

8.7    **Elimination of Vacant Classes**. Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance.

## ARTICLE IX
## MEANS OF IMPLEMENTING THE LIQUIDATION TOGGLE PLAN

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of this Plan if the Debtor selects the Liquidation Toggle.

9.1    **Post-Effective Date Debtor; Plan Administrator**

(a)    **Post-Effective Date Debtor.** The Debtor shall continue in existence after the Effective Date as the Post-Effective Date Debtor for purposes of (1) winding down the Debtor's Estate as expeditiously as reasonably possible and liquidating any non-Cash

Retained Assets held by the Post-Effective Date Debtor after the Effective Date, (2) resolving any Disputed Administrative Claims, Priority Tax Claims, Secured Claims, Other Priority Claims, Convenience Claims, and General Unsecured Claims, (3) paying Allowed Claims in accordance with this Plan, (4) enforcing and prosecuting claims, interests, rights, and privileges under any Causes of Action in an efficient manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (5) filing appropriate tax returns, and (6) administering the Plan in an efficacious manner. The Post-Effective Date Debtor shall be deemed to be substituted as the party-in-lieu of the Debtor in all matters, including (1) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (2) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Post-Effective Date Debtor to File motions or substitutions of parties or counsel in each such matter.

(b)     **Re-vesting of Property in Post-Effective Date Debtor.**  On the Effective Date, the Retained Assets and Reorganization Assets shall vest in the Post-Effective Date Debtor for the purpose of liquidating the Estate and consummating the Plan.  The Retained Assets and Reorganization Assets shall be held free and clear of all Liens, Claims, and Interests of Holders of Claims and Interests, except as otherwise provided in the Plan.  Any Distributions to be made under the Plan from the Retained Assets or General Unsecured Claim Distribution Fund shall be made by the Plan Administrator or his, her or its designee.  The Post-Effective Date Debtor and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

(c)     **Plan Administrator.**

(1)     **Appointment.**  The initial Plan Administrator shall be selected by the Debtor and identified in the Plan Supplement.  The Plan Supplement will also disclose the principal terms of the Plan Administrator's proposed compensation.

The appointment of the Plan Administrator shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.

The Plan Administrator shall act for the Post-Effective Date Debtor in the same capacity and with the same authority as applicable to a board of directors and officers, subject to the provisions hereof (and all certificates of incorporation and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtor shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole director and the sole officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtor's directors and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtor.  For the avoidance of doubt, the foregoing shall not limit the authority of the Post-Effective Date Debtor to continue the employment of any former director or officer or to retain any such individual as an independent contractor.

(2)    **Duties and Powers.**  The Plan Administrator shall be authorized, empowered and directed to take all actions necessary to comply with this Plan and exercise and fulfill the duties and obligations arising hereunder, including, without limitation:

(i)    To liquidate, receive, hold, supervise, invest and protect the Retained Assets of the Post-Effective Date Debtor;

(ii)    To implement Distributions to Holders of Allowed Claims as provided for or contemplated by the Plan and take other actions consistent with the Plan and the implementation therefor, including the establishment and maintenance of appropriate reserves in accordance with this Plan;

(iii)    To establish and maintain, as applicable, bank accounts in the name of the Post-Effective Date Debtor;

(iv)    To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees and consultants by the Post-Effective Date Debtor or Plan Administrator and to pay, from the Wind-Down Expense Reserve, (i) the charges incurred by the Plan Administrator on or after the Effective Date for services of professionals, without application to the Bankruptcy Court, and (ii) disbursements, expenses or related support services relating to the winding down of the Debtor and implementation of the Plan, without application to the Bankruptcy Court;

(v)    To cause, on behalf of the Post-Effective Date Debtor and the Estate, all necessary tax returns and all other appropriate or necessary documents related to municipal, State, Federal or other tax law to be prepared or filed timely, in accordance with the Plan and to pay taxes of the Post-Effective Date Debtor;

(vi)    To seek a final decree closing the Debtor's chapter 11 case; and

(vii)    To exercise such other powers as may be vested in it pursuant to an order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

(3)    **Resignation.**  The Plan Administrator may resign at any time upon thirty (30) days' written notice Filed with the Bankruptcy Court and served upon the U.S. Trustee and any Entities that have formally requested notice pursuant to Bankruptcy Rule 2002, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon his, her or its appointment, the successor Plan Administrator, without any further act other than the Filing of a notice with the Bankruptcy Court, shall become fully vested with all the rights, powers, duties, and obligations of its predecessor and all

40

responsibilities of the predecessor Plan Administrator relating to the Post-Effective Date Debtor shall be terminated.

(4)    **Removal.**  The U.S. Trustee or any creditor of the Post-Effective Date Debtor may request the removal of the Plan Administrator for "cause" pursuant to a motion Filed with the Bankruptcy Court and served upon (a) the Plan Administrator, the Post-Effective Date Debtor and their counsel, (b) the U.S. Trustee (if not the movant) and (c) all other Entities that have formally requested notice pursuant to Bankruptcy Rule 2002.  In connection with any such motion to remove the Plan Administrator, "cause" will include: (a) the Plan Administrator's willful failure to perform his, her or its material duties hereunder, which is not remedied within thirty (30) days of notice; (b) the Plan Administrator's death; (c) the Plan Administrator's mental or physical incapacity that materially and adversely affects the Plan Administrator's ability to perform his, her or its duties under the Plan lasting for a period of more than thirty (30) days; (d) the Plan Administrator's commission of an act of fraud, theft or embezzlement in connection with the Plan Administrator's duties under this Plan; (e) the Plan Administrator's conviction for the commission of a felony with all appeals having been exhausted or appeal periods lapsed; provided, however, that no "cause" shall exist involving clause (a) above until the Plan Administrator first has failed to cure such failure within thirty (30) days of having been given written notice of such failure.  For purposes of the foregoing, no act or failure to act on the part of the Plan Administrator shall be considered "willful" unless it is done, or permitted to be done, by the Plan Administrator without reasonable belief that the Plan Administrator's action or omission was in the best interests of the Post-Effective Date Debtor.

(d)    **Wind-Down.**

On and after the Effective Date, the Plan Administrator and the Post-Effective Date Debtor will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator and the Post-Effective Date Debtor shall have the power and authority to take any action necessary to wind down and dissolve the Estate.

As soon as practicable after the Effective Date, the Plan Administrator shall take any and all actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  From and after the Effective Date the Debtor (a) for all purposes shall be deemed to have withdrawn its business operations from any state in which the Debtor was previously conducting, or is registered or licensed to conduct, its business operations, and shall not be required to File any document, pay any sum, or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have canceled pursuant to this Plan all Interests, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

(e)    **Limitation    of    Liability;    Exculpation    of    Plan Administrator**.  To the greatest extent permitted by law, the Post-Effective Date Debtor will provide for the exculpation and indemnity of the Plan Administrator.

(f)    **Tax Returns.**  After the Effective Date, the Plan Administrator shall cause the Post-Effective Date Debtor to complete and file all final or otherwise required federal, state, and local tax returns for the Debtor, and, pursuant to section 505(b) of the

41

Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of the Debtor's chapter 11 case, as determined under applicable tax laws.

(g)    **Dissolution of the Post-Effective Date Debtor.**  Upon the Effective Date, the Plan Administrator shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtor in and withdraw the Post-Effective Date Debtor from applicable states.

(h)    **Fees and Expenses of Plan Administrator.** Notwithstanding anything to the contrary herein, all Wind-Down Expenses (including the compensation and expenses of the Post-Effective Date Debtor and any professionals retained by the Plan Administrator or the Post-Effective Date Debtor), shall be funded from the Wind-Down Expense Reserve.

(i)    **Bonding of Plan Administrator.** The Plan Administrator shall not be obligated to obtain a bond but may do so, in his or her sole discretion, in which case the expense incurred by such bonding shall be paid by the Wind-Down Expense Reserve.

(j)    **Fiduciary Duties.** Pursuant to this Plan, the Plan Administrator shall act as a fiduciary for the Post-Effective Date Debtor for the benefit of all Holders of Allowed Claims that will receive Distributions pursuant to the terms of this Plan.

9.2    **Cancellation of Instruments and Documents.**  On the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims against and Interests in the Debtor shall be deemed automatically extinguished, canceled, and of no further effect with the Debtor having no continuing obligations thereunder, and shall be deemed rejected and terminated.

9.3    **Reduction in Authorized Membership Interests and Issuance of Single Membership Interest to Plan Administrator**.  Following the Effective Date, the number of classes of membership interests in the Post-Effective Date Debtor shall be reduced to one and the number of authorized membership interests in that class shall be reduced to one.  On the Effective Date, the sole membership interest in the Post-Effective Date Debtor shall be deemed to have been issued to the Plan Administrator and shall not be transferrable by the Plan Administrator, except to a successor Plan Administrator selected in accordance with the Plan. The sole membership interest in the Post-Effective Date Debtor shall be held by the Plan Administrator solely for purposes of allowing the Plan Administrator to approve and take any corporate action necessary to implement the terms of the Plan in accordance with the terms thereof.

9.4    **Post-Effective Date Professional Fees and Expenses**. Professionals that perform post-Effective Date services for the Post-Effective Date Debtor shall provide monthly invoices to the Plan Administrator describing the services rendered, and the fees and expenses incurred in connection therewith.  Post-Effective Date professionals of the Post-Effective Date Debtor who timely tender such invoices shall be paid by the Plan Administrator for such services, subject to Article IX herein, not less than ten (10) days after the submission to the Plan Administrator by such professionals of said monthly invoices, unless, within such ten (10) day

period, a written objection to such payment is made by the Post-Effective Date Debtor.  To the extent a written objection to such professional's monthly invoice cannot be resolved by the professional and the Plan Administrator, payment of such invoice shall be made only upon Final Order of the Bankruptcy Court.

9.5    **Disposition of Books and Records**. After the Effective Date, the Debtor shall transfer all the Debtor's books and records in its possession, if any, relating to the conduct of the Debtor's business prior to the Effective Date to the Plan Administrator on behalf of the Post-Effective Date Debtor.  From and after the Effective Date, the Plan Administrator shall continue to preserve and maintain all documents and electronic data transferred to the Plan Administrator by the Debtor and the Plan Administrator shall not destroy or otherwise abandon any such documents and records (in electronic or paper format) absent further order of the Court.

9.6    **Release of Liens**. Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, or other security interests against the property of the Estate shall be released.  The Plan Administrator shall have the authority to file lien releases in connection with the foregoing.

9.7    **Exemption from Certain Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor or Post-Effective Date Debtor, as applicable, to any other Entity pursuant to this Plan shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any applicable instruments or documents without the payment of any such tax or governmental assessment.

9.8    **Setoffs**. On or after the Effective Date, the Post-Effective Date Debtor or Plan Administrator, may, pursuant to applicable law (including section 553 of the Bankruptcy Code), offset against any Claim, including an Administrative Claim, before any Distribution is made on account of such Claim, any and all the claims, rights and Causes of Action of any nature that the Debtor or Post-Effective Date Debtor may hold against the Holder of such Claim.

9.9    **Withdrawal of Plan**. The Debtor reserves the right to revoke and withdraw or modify this Plan at any time prior to the Confirmation Date or, if the Debtor is for any reason unable to consummate this Plan after the Confirmation Date, at any time up to the Effective Date.  If the Debtor revokes or withdraws this Plan, (a) nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtor or to prejudice in any manner the rights of the Debtor or any Entity in any further proceeding involving the Debtor and (b) the result shall be the same as if the Confirmation Order were not entered, this Plan was not filed and the Effective Date did not occur.

9.10    **Insurance Preservation**.  Nothing in this Plan shall diminish or impair the enforceability of any insurance policies and related agreements that may cover Claims and Causes of Action against the Debtor, the D&Os or any other Entity.  Without limiting the foregoing, and notwithstanding anything else in this Plan, (i) nothing in this Plan shall limit any insured from obtaining coverage under any of the Debtor's insurance policies and related

agreements, *provided*, *however*, that other orders of the Bankruptcy Court, whether entered before or after the Effective Date, may limit insureds from obtaining the proceeds of such coverage for reasons other than this Plan and shall not be affected by this Plan; and (ii) nothing in this Plan (including, without limitation, any provision that purports to be preemptory or supervening or grants an injunction, discharge, or a release) shall in any way operate to impair, diminish, or waive, or have the effect of impairing, diminishing or waiving, the legal or contractual rights, claims, defenses, liabilities or obligations of any Entity, including, without limitation, the Debtor, the Post-Effective Date Debtor, the Plan Administrator, the D&Os and any insurers, pursuant to any insurance policies and related agreements, including, without limitation, the terms, conditions, limitations, exclusions, and endorsements thereof, that may cover Claims or Causes of Action against the Debtor, the Estate, the Post-Effective Date Debtor, the Plan Administrator, the D&Os, any insurers or any other Entity.

ARTICLE X
**MEANS OF IMPLEMENTING THE REORGANIZATION TOGGLE PLAN**

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of this Plan if the Debtor selects the Reorganization Toggle.

10.1    **Liquidating Trust.**

(a)    **Establishment of the Liquidating Trust**.  The Liquidating Trust shall be established and shall become effective on the Effective Date.

(b)    **Vesting of Liquidating Trust Assets**.  Upon the occurrence of the Effective Date, the Liquidating Trust Assets shall be transferred to the Liquidating Trust in accordance with this Plan.  The Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Liens, claims, and interests.

Upon transfer of the Liquidating Trust Assets, the Debtor shall have no further duties or responsibilities in connection with the implementation of this Plan.

(c)    **Liquidating Trust Assets**. All Distributions to the Holders of (i) Allowed General Unsecured Claims and (ii) Administrative Claims, Priority Tax Claims, Secured Claims, Other Priority Claims and Convenience Claims that are not Allowed as of the Effective Date but subsequently Allowed, shall be from the Liquidating Trust.  The Liquidating Trust shall among other things (x) hold and administer the reserves set forth in section 13.1 of this Plan (and make Distributions therefrom) and (y) administer the Liquidating Trust Assets.

(d)    **Trust Distributions**. The Liquidating Trustee shall distribute the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement.

(e)    **Duration of the Trust**. The Liquidating Trust shall have an initial term of one year; *provided*, *however*, that, if warranted by the facts and circumstances, then the Liquidating Trustee shall be authorized to extend the Liquidating Trust for additional six-month extensions as permitted under applicable law.  The Liquidating Trust may be terminated earlier than its scheduled termination if the Liquidating Trustee has administered all the

Liquidating Trust Assets and performed all other duties required by this Plan and the Liquidating Trust Agreement. As soon as practicable after the final Distribution Date, the Liquidating Trustee shall seek entry of a Final Order closing the chapter 11 case pursuant to section 350(a) of the Bankruptcy Code.

10.2  **Liquidating Trustee**.

(a)  **Appointment**. The initial Liquidating Trustee shall be appointed by the Debtor, be approved in the Confirmation Order and be effective as of the Effective Date. The identity of the initial Liquidating Trustee will be disclosed in the Plan Supplement. Successor Liquidating Trustee(s) shall be appointed as set forth in the Liquidating Trust Agreement.

(b)  **Power and Duties**. The powers and duties of the Liquidating Trustee, as well as the procedures of the Liquidating Trust, will be substantially similar to the powers and duties of the Plan Administrator and the procedures set forth under the Liquidation Toggle, and will be set forth in the Liquidating Trust Agreement.

10.3  **Vesting of Reorganization Assets in Reorganized Debtor.** On the Effective Date, the Reorganization Assets shall vest in the Reorganized Debtor for the purpose of consummating the Plan under the Reorganization Toggle. The Reorganization Assets shall be held free and clear of all Liens, Claims, and Interests of Holders of Claims and Interests, except as otherwise provided in the Plan. The Reorganized Debtor shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

10.4  **Restructuring Transactions**. Before, on and after the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Reorganization Toggle, including: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the Debtor or Reorganized Debtor, as applicable, and the Plan Sponsor may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any of the Reorganization Assets on terms consistent with the terms of this Plan and having other terms for which the Debtor or Reorganized Debtor, as applicable, and the Plan Sponsor may agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (d) such other transactions that are required, or that the applicable parties determine to be necessary or appropriate, to effectuate the Reorganization Toggle.

10.5  **Cancellation of Existing Equity Interests; Issuance of New Equity Interest.** On the Effective Date, all Existing Equity Interests shall be canceled and the New Equity Interests shall be issued to the Plan Sponsor or to another Entity at the direction of the Plan Sponsor in its sole discretion. The New Equity Interests when issued will be duly authorized, validly issued and, if applicable, fully paid and nonassessable.

10.6   **Plan Sponsor Contribution**.  On the Effective Date, the Plan Sponsor shall provide the Plan Sponsor Contribution in exchange for 100% of the New Equity Interests. The Plan Sponsor Contribution shall be contributed to Debtor or the Liquidating Trust on or before the Effective Date.

10.7   **Corporate Existence**.   Under the Reorganization Toggle, on the Effective Date, the Debtor shall continue to exist after the Effective Date as a separate limited liability company with all the powers of a limited liability company pursuant to Delaware law and the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

10.8   **Directors and Officers of the Reorganized Debtor**.  On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtor shall be deemed to have resigned, solely in their capacities as such.  To the extent applicable, the identity of any directors and officers in the Reorganized Debtor shall be disclosed in the Plan Supplement.

10.9   **Cancellation of Instruments and Documents**.  On the Effective Date, except as otherwise specifically provided for in the Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims against and Interests in the Debtor shall be deemed automatically extinguished, canceled, and of no further effect with the Debtor having no continuing obligations thereunder, and shall be deemed rejected and terminated.

10.10   **Release of Liens**. Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, or other security interests against the property of the Estate shall be released.  The Liquidating Trustee shall have the authority to file lien releases in connection with the foregoing.

10.11   **Exemption from Certain Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor or Reorganized Debtor, as applicable, to any other Entity pursuant to this Plan shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any applicable instruments or documents without the payment of any such tax or governmental assessment.

10.12   **Setoffs**. On or after the Effective Date, the Liquidating Trustee, may, pursuant to applicable law (including section 553 of the Bankruptcy Code), offset against any Claim, including an Administrative Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights and Causes of Action of any nature that the Debtor or the Liquidating Trustee may hold against the Holder of such Claim.

46

10.13  **Withdrawal of Plan**.  The Debtor reserves the right to revoke and withdraw or modify this Plan at any time prior to the Confirmation Date or, if the Debtor is for any reason unable to consummate this Plan after the Confirmation Date, at any time up to the Effective Date.  If the Debtor revokes or withdraws this Plan, (a) nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtor or to prejudice in any manner the rights of the Debtor or any Entity in any further proceeding involving the Debtor and (b) the result shall be the same as if the Confirmation Order were not entered, this Plan was not filed and the Effective Date did not occur.

10.14  **Insurance Preservation**.  Nothing in this Plan shall diminish or impair the enforceability of any insurance policies and related agreements that may cover Claims and Causes of Action against the Debtor, the D&Os or any other Entity.  Without limiting the foregoing, and notwithstanding anything else in this Plan, (i) nothing in this Plan shall limit any insured from obtaining coverage under any of the Debtor's insurance policies and related agreements, *provided*, *however*, that other orders of the Bankruptcy Court, whether entered before or after the Effective Date, may limit insureds from obtaining the proceeds of such coverage for reasons other than this Plan and shall not be affected by this Plan; and (ii) nothing in this Plan (including, without limitation, any provision that purports to be preemptory or supervening or grants an injunction, discharge, or a release) shall in any way operate to impair, diminish, or waive, or have the effect of impairing, diminishing or waiving, the legal or contractual rights, claims, defenses, liabilities or obligations of any Entity, including, without limitation, the Debtor, the Liquidating Trust, the Liquidating Trustee, the D&Os and any insurers, pursuant to any insurance policies and related agreements, including, without limitation, the terms, conditions, limitations, exclusions, and endorsements thereof, that may cover Claims or Causes of Action against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, the D&Os, any insurers or any other Entity.

ARTICLE XI
**EFFECT OF PLAN ON CLAIMS AND INTERESTS**

11.1  **Binding Effect**. This Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Post-Effective Date Debtor, Plan Administrator, Liquidating Trust, Liquidating Trustee and Reorganized Debtor, as applicable.

11.2  **Compromise and Settlement**. Notwithstanding anything contained in this Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective Distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and the Interests in each Class with due regard to any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(b) and (c) of the Bankruptcy Code or otherwise. Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have expressly agreed to them, and the treatment of claims and interests is being afforded pursuant to confirmation by satisfying the requirement of section 1129 of the Bankruptcy Code.

11.3  **No Discharge of the Debtor in Liquidation Toggle**.  Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtor;

provided, however, that no Holder of any Claim or Interest may, on account of such Claim or Interest, seek or receive any payment or other Distribution from, or seek recourse against, the Estate, the Plan Administrator and/or their respective successors, assigns and/or property, except as expressly provided in this Plan.

11.4    **Injunction to Protect Estate Assets in Liquidation Toggle**.  **In the event of the Liquidation Toggle:**

(a)    **From and after the Effective Date, all Persons and Entities who have held, hold, or may hold Claims or Equity Interests that have been released or are subject to exculpation under this Plan or the Confirmation Order, are permanently enjoined from taking any of the following actions against the Estate, the Released Parties, the Plan Administrator, the Post-Effective Date Debtor or any of their respective property or assets, on account of any such Claims or Equity Interests: (i) commencing or continuing, in any manner or in any place, any action or proceeding seeking to collect or to recover in any manner against the assets; (ii) enforcing, attaching, collecting, or recovering in any manner against the assets, any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance against the assets; (iv) asserting setoff unless such setoff was formally asserted in a timely Filed proof of Claim or in a pleading Filed with the Bankruptcy Court prior to entry of the Confirmation Order or right of subrogation of any kind or against any debt, liability, or obligation; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Released Claims or Interests; *provided, however,* that such Persons and Entities shall not be precluded from exercising their rights under and consistent with the terms of this Plan or the Confirmation Order.  For the avoidance of doubt and notwithstanding anything to the contrary in the Plan, the Debtor, the Estate, the Post-Effective Date Debtor and the Plan Administrator are not receiving a discharge under section 524(a) of the Bankruptcy Code and the injunction set forth herein shall, with respect to Plan, the Debtor, the Estate, the Post-Effective Date Debtor and the Plan Administrator, terminate upon the later of (a) distribution of all of the assets under the Plan, and (b) the closing of the Chapter 11 Case; and**

(b)    **Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, and other parties in interest, along with their Related Parties, shall be enjoined from taking any actions to interfere with the implementation or substantial consummation of this Plan by the Debtor, the Post-Effective Date Debtor, the Plan Administrator and/or their respective Related Parties, as applicable.**

11.5    **In the event of the Reorganization Toggle, on and after the Effective Date, the Debtor shall be discharged to the fullest extent permitted under section 1141(d) of the Bankruptcy Code from any debt that arose before the date of confirmation of the Plan, and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. The Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan.  The foregoing discharge shall not apply to the ability of Holders of Allowed Claims to recover from the Liquidating Trust on account of such Allowed Claims and/or Interests, all in accordance with the terms of the Plan and Liquidating Trust Agreement.**

11.6    **Discharge Injunction in Reorganization Toggle.  In the event of the Reorganization Toggle, and except as provided in the Plan, to the fullest extent permitted by law, or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, Interest, or other debt or liability that is satisfied, released and discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Reorganized Debtor, the Liquidating Trust, and the Liquidating Trustee or their property on account of any such discharged Claims, debts, liabilities or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; or (iv) asserting a setoff unless such setoff was formally asserted in a timely Filed proof of Claim or in a pleading Filed with the Bankruptcy Court prior to entry of the Confirmation Order or right of subrogation of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor.**

11.7    **Exculpation.  Notwithstanding anything contained in this Plan to the contrary, the Exculpated Parties, and any property of any of the foregoing Persons, shall not have or incur any liability to any Entity for any act taken or omitted to be taken from the Petition Date through the Effective Date in connection with, related to or arising from the formulation, negotiation, preparation, dissemination, implementation, or administration of this Plan, the Solicitation Materials, the Disclosure Statement, or any contract, instrument, or other agreement or document created or entered into in connection with this Plan, or any other act taken or omitted to be taken from the Petition Date through the Effective Date in connection with or in contemplation of the reorganization or liquidation of the Debtor, this chapter 11 case, or the confirmation or consummation of this Plan, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administrating this Plan (including soliciting acceptances or rejections thereof if necessary); (ii) the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into or any action taken or not taken in connection with this Plan; or (iii) any Distributions made pursuant to this Plan, except for acts constituting fraud, willful misconduct, bad faith, or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.  Notwithstanding the foregoing, for the avoidance of doubt, this section of the Plan shall not (i) exculpate or release the Exculpated Parties from anything other than as expressly identified in the first sentence of this section, (ii) prevent or limit the ability of the Debtor, the Plan Administrator or the Liquidating Trustee, as the case may be, to object to a Claim of an Exculpated Party on any basis other than matters exculpated or released in this section, and (iii) prevent or limit the ability of the Debtor, the Plan Administrator or the Liquidating Trustee, as the case may be, to object to, or defend against, on any basis, any Administrative Claim of an Exculpated Party for substantial contribution.**

11.8    **Releases by the Debtor.  Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, the Debtor and its Estate shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies and**

liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or in part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtor, including, without limitation, (i) the chapter 11 case, (ii) the combined Plan and Disclosure Statement, (iii) the subject matter of, or the transaction or events giving rise to, any claim or equity interest that is treated in this Plan, (iv) the business or contractual arrangements between the Debtor and any Released Party, (v) the negotiation, formulation or preparation of this combined Plan and Disclosure Statement, the Plan Supplement, or related agreements, instruments or other documents, (vi) the Sale or its related transaction documents, and the negotiation, formulation or preparation of the Sale and the related transaction documents, and (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that may be asserted by or on behalf of the Debtor or its Estate, against any of the Released Parties.  The foregoing releases shall not extend to acts constituting willful misconduct, bad faith, or gross negligence.

  11.9 **Releases by Holders of Claims.**  Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Releasing Parties shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or in part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtor, including, without limitation, (i) the chapter 11 case, (ii) the combined Plan and Disclosure Statement, (iii) the subject matter of, or the transaction or events giving rise to, any claim or equity interest that is treated in this Plan, (iv) the business or contractual arrangements between the Debtor and any Released Party, (v) the negotiation, formulation or preparation of this combined Plan and Disclosure Statement, the Plan Supplement, or related agreements, instruments or other documents, (vi) the Sale or its related transaction documents, and the negotiation, formulation or preparation of the Sale and the related transaction documents, and (vii) the confirmation or consummation of this Plan or the solicitation of votes on this Plan that such Releasing Party would have been legally entitled to assert (whether individually or collectively) against any of the Released Parties.  The foregoing releases shall not extend to acts constituting willful misconduct, bad faith, or gross negligence.

  11.10 **Indemnification Obligations**. Except as otherwise provided in a previously entered order of this Bankruptcy Court, this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, including sections 9.10, 10.14 and 12.1 of this Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the

Effective Date, to the extent executory, and discharged solely to the extent the Reorganization Toggle is selected; *provided*, *however*, that (i) all rights, if any, of the Debtor, the Debtor's current officers and directors, the Estate, the Post-Effective Date Debtor, the Plan Administrator, the Reorganized Debtor, and the Liquidating Trustee, as applicable, in and to any of the Debtor's insurance policies hereby are expressly reserved and are not limited in any way by this Plan; and (ii) nothing in this Plan shall be deemed to modify any indemnification obligations of the Debtor pursuant to an order of this Bankruptcy Court concerning the retention or employment of a professional. Nothing in this Plan shall be deemed to release the Debtor's insurers from, or limit the obligations of any of the Debtor's insurers concerning any claims that might be asserted by insureds, additional insureds, or counterparties to contracts or agreements providing for the indemnification by and of the Debtor, to the extent of available coverage. To the extent that this section 11.10 alters, affects, impairs, limits or otherwise modifies any insurance coverage of any Person, this section 11.10 shall be of no force and effect as to the insurance coverage of such Person.

   11.11 **Terms of Injunctions or Stays.** Unless otherwise provided in this Plan, all injunctions or stays provided for in this chapter 11 case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

ARTICLE XII
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

   12.1 **Executory Contracts and Unexpired Leases Deemed Rejected**. Except as set forth in section 12.3, on the Effective Date, all the Debtor's Executory Contracts and unexpired leases will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except with respect to any Executory Contract or unexpired lease that: (a) the Debtor previously assumed, assumed and assigned or rejected, or (b) for which, prior to the Effective Date, the Debtor Filed a motion to assume, assume and assign, or reject on which the Bankruptcy Court has not ruled. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections of Executory Contracts and unexpired leases pursuant to this Article and sections 365(a) and 1123 of the Bankruptcy Code.

   12.2 **Supplemental Bar Date for Rejection Damages**. If the rejection of any Executory Contract or unexpired lease under this Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim, to the extent that it is timely Filed and is an Allowed Claim, shall be classified in Class 3 or 4, as applicable; *provided*, *however*, that the General Unsecured Claim arising from such rejection shall be forever barred and shall not be enforceable against the Debtor, the Post-Effective Date Debtor, the Plan Administrator, their successors or properties, unless a proof of such Claim is Filed and served on the Plan Administrator or Liquidating Trustee, as applicable, within thirty (30) days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the Executory Contract or unexpired lease which may include, if applicable, the Confirmation Order.

   12.3 **Assumption of Executory Contracts in the Reorganization Toggle**. Unless otherwise specified herein or in the Plan Supplement, on the Effective Date, and subject to

the payment of any applicable Cure Amounts, all Executory Contracts relating to the Reorganization Assets to which the Debtor is a party, and which have not expired by their own terms on or prior to the Confirmation Date shall be deemed assumed except for any executory contract that: (a) the Debtor previously assumed, assumed and assigned or rejected, or (b) for which, prior to the Effective Date, the Debtor Filed a motion to assume, assume and assign, or reject, on which the Bankruptcy Court has not ruled. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all assumptions of Executory Contracts and unexpired leases pursuant to this Article and sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract assumed pursuant to the Plan shall vest in, and be fully enforceable by, the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, and any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law. The Debtor shall file and serve on parties to Executory Contracts to be assumed a notice reflecting the Debtor's intention to assume the contract in connection with the Plan and setting forth the proposed Cure Amount (if any). If the counterparty believes any different Cure Amount is due in connection with the assumption or otherwise objects to the assumption, it must assert such Cure Amount or any other objection by Filing an objection with the Bankruptcy Court and serving such objection in accordance with the procedures to be set forth in the Debtor's notice.

ARTICLE XIII
**RESERVES AND DISTRIBUTIONS**

13.1    **Establishment of Reserves.** On the Effective Date and prior to making any Distributions, the Plan Administrator on behalf of the Post-Effective Date Debtor, or the Liquidating Trustee on behalf of the Liquidating Trust, as applicable, shall establish a reserve for Disputed Administrative Claims, Tax Claims, Secured Claims, Other Priority Claims and Convenience Claims (the "<u>Plan Claim Reserve</u>") and shall transfer thereto the amount of Cash from the Retained Cash as deemed necessary by the Plan Administrator or Liquidating Trustee, as applicable, to fund the Plan Claim Reserve in accordance with the provisions of the Plan.

On the Effective Date and prior to making any Distributions from the General Unsecured Claim Distribution Fund, the Plan Administrator or Liquidating Trustee, as applicable, shall establish a reserve for Disputed General Unsecured Claims and shall transfer thereto the amount of Cash from the General Unsecured Claim Distribution Fund as deemed necessary by the Plan Administrator or Liquidating Trustee, as applicable, to provide Pro Rata Distributions to Holders of Allowed General Unsecured Claims if the Disputed General Unsecured Claims become Allowed in accordance with the provisions of the Plan.

On the Effective Date and prior to making any Distributions, the Plan Administrator or Liquidating Trustee, as applicable, shall establish the Wind-Down Expense Reserve, and shall transfer thereto the amount of Cash as deemed necessary to fund the expenses of the Wind-Down Expense Reserve in accordance with the provisions of the Plan.

13.2    **Funding of Certain Reserves**. With respect to the Plan Claim Reserve, the amount of Cash deposited into such reserve shall be equal to the amount of Cash that Holders of Disputed Claims in the Plan Claim Reserve would be entitled under this Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or such lesser amount as

authorized in Section 13.6 of this Plan.  With respect to the Wind-Down Expense Reserve, the amount of Cash deposited into such reserve shall be equal to the Wind-Down Expenses.

13.3    **Distributions for Claims Allowed as of the Effective Date**. Except as otherwise provided herein, and only after the funding of the reserves, or as ordered by the Bankruptcy Court, all Distributions to be made on account of Administrative Claims, Priority Tax Claims, Secured Claims, Other Priority Claims and Convenience Claims that are Allowed on or prior to the Effective Date shall be made on the Effective Date by the Debtor; *provided*, *however*, that Distributions for Allowed General Unsecured Claims as of the Effective Date shall be made on a Distribution Date to be determined in the sole discretion of the Plan Administrator or Liquidating Trustee, as applicable.  Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan. Notwithstanding any other provision of this Plan to the contrary, no Distribution shall be made on account of any Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely Filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently Filed Proof of Claim that purports to amend the prior Proof of Claim.

13.4    **No Distributions on Disputed Claims**. No Distribution shall be made by the Plan Administrator or Liquidating Trustee, as applicable, with respect to a Disputed Claim until the same, or some portion thereof, becomes an Allowed Claim.

13.5    **Distributions on Claims Allowed After the Effective Date**. Payments and Distributions from the Plan Administrator or Liquidating Trustee, as applicable, to each respective Holder on account of a Disputed Claim, to the extent that such Disputed Claim ultimately becomes an Allowed Claim, shall be made in accordance with provisions of this Plan that govern Distributions to such Holders of Allowed Claims.  Except as otherwise provided in this Plan, within ninety (90) days after such Disputed Claim becomes an Allowed Claim, the Plan Administrator or Liquidating Trustee, as applicable,  shall distribute to such Holder any Cash from the applicable reserve that would have been distributed on the dates Distributions were previously made to Holders of Allowed Claims if such Disputed Claim had been an Allowed Claim on such dates.

All Distributions made under this Article on account of an Allowed Claim will be made together with any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Disputed Claim had been an Allowed Claim on the dates Distributions were previously made to Holders of Allowed Claims included in the applicable Class.

13.6    **Objections to and Estimation of Claims**. Unless otherwise provided in this Plan, after the Effective Date through the Claims Objection Deadline, the Plan Administrator or Liquidating Trustee, as applicable, shall have sole and exclusive standing to object to Claims in order to have the Bankruptcy Court determine the amount and treatment of any Claim.  From and after the Effective Date, the Plan Administrator, or the Liquidating Trustee, as applicable, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  Except as otherwise provided in this Plan, if a party files a Proof of Claim and (i) the Debtor, the Plan

Administrator, or the Liquidating Trustee, as applicable, Files an objection to that Claim or otherwise formally challenges the Claim or (ii) the Claim otherwise is a Disputed Claim under this Plan, then such Claim shall be Disputed unless Allowed or Disallowed by a Final Order or as otherwise set forth in this Plan.  Except as otherwise provided in this Plan, all Proofs of Claim filed after the Effective Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, the Estate, the Post-Effective Date Debtor, the Plan Administrator, the Liquidating Trust or the Liquidating Trustee, as applicable, without the need for any objection by the Plan Administrator or Liquidating Trustee, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.

Except as set forth in this Plan with respect to Administrative Claims, all objections to Claims must be filed and served on the Holders of such Claims by the applicable Claims Objection Deadline, as the same may be extended by the Bankruptcy Court.  If an objection has not been filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the applicable Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.  Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those Entities that have requested notice in this chapter 11 case, or to such Entities as the Bankruptcy Court shall order.

13.7    **Delivery of Distributions and Undeliverable or Unclaimed Distributions**.

(a)    **Delivery of Distributions in General**. Distributions to Holders of Allowed Claims shall be made (i) at the addresses set forth on the Proofs of Claim filed by such Holders, (ii) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator or Liquidating Trustee, as applicable, after the date of any related Proof of Claim, (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Plan Administrator or Liquidating Trustee, as applicable, has not received a written notice of a change of address, (iv) at the addresses set forth in the other records of the Debtor, the Post-Effective Date Debtor or the Liquidating Trust, as applicable, at the time of the Distribution, or (v) any change of address as reflected on the Bankruptcy Court docket.

In making Distributions under this Plan, the Plan Administrator or Liquidating Trustee, as applicable, may rely upon the accuracy of the claims register maintained by the Claims Agent in this chapter 11 case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

(b)    **Undeliverable and Unclaimed Distributions**. If the Distribution to any Holder of an Allowed Claim is returned to the Plan Administrator or Liquidating Trustee, as applicable, as undeliverable or is otherwise an Unclaimed Distribution, no further Distributions shall be made to such Holder unless and until the Plan Administrator or Liquidating Trustee, as applicable, is notified in writing of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest.  If a Distribution

is returned as undeliverable, the Plan Administrator or Liquidating Trustee, as applicable, shall use reasonable efforts to determine such creditor's then-current address.

(c) **Treatment of Unclaimed Distributions**. Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an Unclaimed Distribution within three (3) months after the final Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or Unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an Unclaimed Distribution against the Debtor and its Estate, the Post-Effective Date Debtor, the Plan Administrator, the Liquidating Trust, the Liquidating Trustee, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property, as the case may be. In such cases, any Cash otherwise reserved for Unclaimed Distributions shall re-vest in the Post-Effective Date Debtor or become property of the Liquidating Trust, as applicable, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan. Nothing contained in this Plan shall require the Plan Administrator or Liquidating Trustee, as applicable, to attempt to locate any Holder of an Allowed Claim; provided, however, that in his, her or its sole discretion, the Plan Administrator may cause the Post-Effective Date Debtor to, or the Liquidating Trustee may, as applicable, periodically publish notice of Unclaimed Distributions.

13.8 **Interest on Claims**. Except as specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder shall be entitled to interest accruing on or after the Petition Date on any Claim. Except as specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

13.9 **Withholding and Reporting Requirements**. In connection with this Plan and all Distributions under this Plan, the Plan Administrator or Liquidating Trustee, as applicable, shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements. The Plan Administrator or Liquidating Trustee, as applicable, shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.

All Entities holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes. No Distribution shall be made to or on behalf of such Entity pursuant to this Plan unless and until such Entity has furnished such information. Any property to be distributed pursuant to this Plan shall be deemed: (i) pending the receipt of such information in the manner established by the Plan Administrator or Liquidating Trustee, as the case may be, an Undeliverable Distribution pursuant to section 13.7(b) of this Plan; or (ii) if such information is not received by the deadline established by the Plan Administrator or Liquidating Trustee, as applicable, and approved by the Bankruptcy Court upon notice and a hearing, forfeited and treated in accordance with section 13.7(c) of this Plan.

Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Debtor (for Distributions to be made on the Effective Date as set forth in section 13.3 of the Plan) or Plan Administrator or Liquidating Trustee, as applicable, (for all other Distributions) for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Post-Effective Date Debtor or Liquidating Trustee, as applicable, in connection with such Distribution.

### 13.10   **Miscellaneous Distribution Provisions**.

(a)   **Method of Cash Distributions**. Any Cash payment to be made by the Debtor, Plan Administrator or the Liquidating Trustee, as applicable, pursuant to this Plan will be in U.S. dollars and may be made, at the sole discretion of the Debtor, the Plan Administrator on behalf of the Post-Effective Date Debtor, or the Liquidating Trustee on behalf of the Liquidating Trust, as applicable, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.  In the case of foreign creditors, Cash payments may be made, at the option of the Debtor, Plan Administrator or Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular jurisdiction.

(b)   **Distributions on Non-Business Days**. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

### 13.11   *De Minimis* **Distribution Provisions**. No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is to receive in such Distribution at least $50.00.  Any Distribution not made pursuant to this section 13.11 shall be treated as an Unclaimed Distribution and is subject to section 13.7 hereof, without regard to any time limits in section 13.7(c).

### 13.12   **Distribution Record Date**. The Plan Administrator or Liquidating Trustee, as applicable, will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.  The Plan Administrator or Liquidating Trustee, as applicable, shall instead be entitled to recognize and deal for all purposes under this Plan with only those record Holders stated on the official claims register as of the close of business on the Distribution Record Date.

### 13.13   **Residual Assets**.   After final Distributions have been made in accordance with the terms of the Plan and all Wind-Down Expenses have been paid or fully reserved for in the sole discretion of the Plan Administrator or Liquidating Trustee, as applicable,

the remaining Cash shall be donated to an unaffiliated charity of the Plan Administrator's or Liquidating Trustee's choice.

## ARTICLE XIV
## **CONFIRMATION AND CONSUMMATION OF THE PLAN**

14.1    **Conditions to Confirmation**. The following are conditions precedent to the occurrence of the Confirmation Date.

(a)    A Final Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Bankruptcy Court;

(b)    Entry of a Confirmation Order that is reasonably acceptable to the Debtor; and

(c)    Approval of all provisions, terms, and conditions hereof shall be contained in the Confirmation Order.

14.2    **Conditions to Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

(a)    The Confirmation Order shall have been entered and shall provide that the Debtor, the Plan Administrator or Liquidating Trustee, as applicable, are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with this Plan and effectuate, advance, or further the purposes thereof;

(b)    The Confirmation Order, the Plan, and all Plan Exhibits shall be, in form and substance, reasonably acceptable to the Debtor, and shall have been executed and delivered by all parties signatory thereto, as applicable;

(c)    If the Reorganization Toggle is selected, then the Reorganization Transaction shall have been signed by the Debtor and Plan Sponsor;

(d)    If the Reorganization Toggle is selected, then the Plan Sponsor shall have demonstrated to the reasonable satisfaction of the Debtor that all actions have occurred or will occur on or before the Effective Date necessary to fund the Plan Sponsor Contribution and effectuate the Reorganization Transaction;

(e)    If the Reorganization Toggle is selected, then the Liquidating Trust Agreement shall have been executed by the parties thereto;

(f)    All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed;

(g)    The Confirmation Order shall have become a Final Order; and

(h)     The Debtor shall have filed a Notice of Effective Date.

14.3    **Consequences of Non-Occurrence of Effective Date**. If the Effective Date does not timely occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and that this Plan be null and void in all respects.  If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign or reject all Executory Contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## ARTICLE XV
## **ADMINISTRATIVE PROVISIONS**

15.1    **Retention of Jurisdiction**. Notwithstanding confirmation of this Plan or occurrence of the Effective Date, and except as otherwise provided by applicable law, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including for the following purposes:

(a)     To determine the allowability, classification, or priority of Claims upon objection of the Plan Administrator, Liquidating Trustee, or any other party in interest entitled to file an objection, and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

(b)     To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or its execution or implementation by any Entity, to construe and to take any other action to enforce and execute this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of this Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in this chapter 11 case on or before the Effective Date with respect to any Entity;

(c)     To protect the property of the Estate from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens on property of the Estate;

(d)     To determine any and all applications for allowance of Fee Claims;

(e)     To determine any Other Priority Claim, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

(f)    To resolve any disputes arising under or related to the implementation, execution, consummation or interpretation of this Plan and the making of Distributions hereunder;

(g)    To determine any and all motions related to the rejection, assumption or assignment of Executory Contracts or unexpired leases, or to determine any motion to reject an Executory Contract or unexpired lease pursuant to section 12.1 of this Plan;

(h)    To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of this chapter 11 case, including any remands;

(i)    To enter a Final Order closing the Debtor's chapter 11 case;

(j)    To modify this Plan under section 1127 of the Bankruptcy Code, to remedy any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order so as to carry out its intent and purposes;

(k)    To issue such orders in aid of consummation of this Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

(l)    To enable the Plan Administrator or Liquidating Trustee, as applicable, to prosecute any and all proceedings to set aside Liens and to recover any transfers, assets, properties or damages to which the Estate may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws except as may be expressly waived pursuant to this Plan;

(m)    To determine any tax liability of the Debtor, the Post-Effective Date Debtor or Liquidating Trust pursuant to section 505 of the Bankruptcy Code;

(n)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(o)    To resolve any disputes concerning whether an Entity had sufficient notice of the chapter 11 case, the Bar Date Order or the otherwise applicable Claims bar date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing;

(p)    To resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in this chapter 11 case;

(q)    To resolve any disputes concerning any exculpation of a non-debtor hereunder or the injunction against acts, employment of process or actions against such non-debtor arising hereunder;

(r)     To approve any Distributions, or objections thereto, under this Plan;

(s)     To approve any Claims settlement entered into or offset exercised by the Plan Administrator or Liquidating Trustee, as applicable; and

(t)     To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

15.2    **Amendments**.

(a)     **Preconfirmation Amendment.**  The Debtor may modify this Plan at any time prior to the entry of the Confirmation Order, provided that this Plan, as modified, and the disclosure statement pertaining thereto meet applicable Bankruptcy Code requirements.

(b)     **Postconfirmation Amendment Not Requiring Resolicitation.**  After the entry of the Confirmation Order, the Debtor may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of this Plan, provided that: (i) the Debtor obtains approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or Distributions of any Class of Allowed Claims or Interests under this Plan.

(c)     **Postconfirmation and Pre-consummation Amendment Requiring Resolicitation.**   After the Confirmation Date and before substantial consummation of this Plan, the Debtor may modify this Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims or Interests, provided that: (i) this Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims or Interests voting in each Class materially or adversely affected by such modification; and (iv) the Debtor complies with section 1125 of the Bankruptcy Code with respect to this Plan as modified.

15.3    **Successors and Assigns**.  The rights, benefits and obligations of any person or entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person or entity.

15.4    **Governing Law**. Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of law.

15.5    **Corporate Action**. Any matters provided for under this Plan involving the corporate structure of the Debtor or corporate action, as the case may be, to be taken by or required of the Debtor shall be deemed to have occurred and be effective as of the Effective Date and shall be authorized and approved in all respects, without any requirement of further action by the Debtor, the Post-Effective Date Debtor, Plan Administrator, the Liquidating Trust or Liquidating Trustee, as the case may be.

15.6    **Effectuating Documents and Further Transactions**. The Debtor, the Plan Administrator, or the Liquidating Trustee, as applicable, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary to effectuate and further evidence the terms and conditions of this Plan.

15.7    **Confirmation Order and Plan Control**. To the extent this Plan is inconsistent with the Disclosure Statement, this Plan controls over the Disclosure Statement.  To the extent the Confirmation Order is inconsistent with this Plan or the Disclosure Statement, the Confirmation Order (and any other orders of this Bankruptcy Court) controls over this Plan and the Disclosure Statement.

15.8    **Miscellaneous Rules.**  This Combined Plan and Disclosure Statement is subject to the following miscellaneous rules: (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order; (ii) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; and (iii) whenever this Plan provides that a payment or Distribution shall occur "on" any date, it shall mean "on, or as soon as reasonably practicable after", such date.

15.9    **Notices**. All notices or requests in connection with this Plan shall be in writing and will be deemed to have been given when received by mail and addressed to:

> **Plan Administrator or Liquidating Trustee, as applicable:**
> To be provided in the Plan Supplement
>
> **Debtor:**
>
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> Eric D. Schwartz
> Matthew B. Harvey
> Paige N. Topper
> Jonathan M. Weyand
> Sophie Rogers Churchill
> 1201 N. Market Street, 16th Floor
> Wilmington, DE 19801
> Tel: (302) 658-9200
> Email: eschwartz@morrisnichols.com
>        mharvey@morrisnichols.com
>        ptopper@morrisnichols.com
>        jweyand@morrisnichols.com

srchurchill@morrisnichols.com

15.10 **No Admissions or Waiver**. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission or waiver by the Debtor with respect to any matter set forth herein, including liability on any Claim or the propriety of a Claim's classification.

Dated: December 20, 2022                    By:    */s/ John Greenlee*
                                                    John Greenlee
                                                    President
                                                    ExpressJet Airlines LLC

62